**Opinion issued August 23, 2018**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-17-00203-CV

―――――――――――――

**TERRI PORTER-GARCIA, Appellant**

**V.**

**THE TRAVIS LAW FIRM, P.C., Appellee**

On Appeal from the 334th District Court
Harris County, Texas
Trial Court Case No. 2017-04314

*and*

**ALLISON E. MARTIN, Appellant**

**V.**

**THE TRAVIS LAW FIRM, P.C., Appellee**

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-04271**

## O P I N I O N

In these combined appeals, the respective trial courts denied appellants[1]

Terri Porter-Garcia's and Allison E. Martin's motions to dismiss claims for breach

of contract, fraud, and violations of the Theft Liability Act brought by their former

employer, appellee The Travis Law Firm, P.C. (the "Law Firm"). On appeal,

Porter-Garcia and Martin contend that the trial courts erred by failing to dismiss

these claims under the Texas Citizens Participation Act ("TCPA"). We conclude

that the TCPA applies. Because the Law Firm established, for these purposes, a

prima facie case of breach of contract against Porter-Garcia and Martin, and

because Porter-Garcia and Martin did not establish by a preponderance of the

---

[1]     We combine in this opinion the reasons for our disposition of *Terri Porter-Garcia v. The Travis Law Firm, P.C.*, No. 01-17-00203-CV and *Allison E. Martin v. The Travis Law Firm, P.C.*, No. 01-17-00206-CV. The facts and issues are substantially similar in the appeals.

evidence any defense to those claims, we affirm the trial courts' orders as to the contract claims. We reverse the denial of Porter-Garcia's and Martin's motions to dismiss, however, on the Law Firm's claims for fraud and violations of the Theft Liability Act. We do not address the merits of the underlying claims or who may ultimately prevail.

## Background

Porter-Garcia and Martin have been embroiled in wage disputes with the Law Firm. Upon resigning from the Law Firm, both Porter-Garcia and Martin filed wage claims with the TWC. The TWC concluded that the Law Firm owed Porter-Garcia $439.32 and Martin $682.66 in unpaid wages. Soon thereafter, the Law Firm filed the instant lawsuits, seeking judicial review of the TWC decisions and asserting causes of action (against both women) for breach of contract, fraud, and violations of the Theft Liability Act.

Porter-Garcia and Martin moved to dismiss, arguing below—as they do here—that the TCPA applied in each case because the lawsuits are based on, relate to, or are in response to the proceedings before the TWC. They further contended that the Law Firm failed to meet its burden under the TCPA, so the statute bars the Law Firm's claims. Following hearings, the trial courts denied the motions to dismiss. Porter-Garcia and Martin appealed.

Because the parties' allegations form an important part of our consideration, we describe the arguments.

The Law Firm alleged claims against both Porter-Garcia and Martin for (1) breach of contract, (2) fraud, and (3) violations of the Theft Liability Act. The Law Firm also sought judicial review of the TWC decisions that concluded that the Law Firm owed Porter-Garcia and Martin unpaid wages. These claims concern the parties' underlying wage disputes. The Law Firm's allegations are premised on its positions that Porter-Garcia and Martin were ineligible for vacation days, holidays, or sick days during their first 90 days of employment and that, after the first 90 days, they would be eligible for three days of paid sick leave. The Law Firm contends that, in alleged oral contracts and representations, Porter-Garcia and Martin agreed to make up any work time that they missed during the first 90-day period and any other missed time in excess of the three days of paid sick leave for which they later became eligible. The Law Firm further argues that, in exchange for their agreement to make up missed work time, the Law Firm agreed to pay them as if they had worked full days even for days, or portions of days, that they missed.

## A.     The Law Firm's breach of contract claims

In its contract claims, the Law Firm alleges that it "performed under the contract[s]" "by paying [Porter-Garcia and Martin] for all of the days that [they]

4

worked, as well as for days that [they] did not work and w[ere] not eligible for paid time-off." But it contends that Porter-Garcia and Martin "breached the contract . . . by accepting payment for days that [they] did not work and not subsequently making up the time at a later date."

The Law Firm emphasizes Porter-Garcia's post-resignation collection efforts, asserting that she "further breached the contract by seeking to be paid for additional days of work after the conclusion of her employment because at the time that Garcia left the Travis Law Firm, she had been absent for at least two (2) days that she was paid for, but did not work." According to the Law Firm, her alleged breach caused it damages in excess of $500.00.

As to Martin, the Law Firm likewise asserts that she "further breached the contract by seeking to be paid for additional days of work after the conclusion of her employment." It alleges that Martin "had been paid for at least thirteen and one-half (13.5) days that she had not worked and she was not eligible to be paid for." Moreover, the Law Firm asserts that Martin stated in her resignation letter that she would be available through September 22, 2015, but she left work on September 8, 2015 "in direct contravention to [her] promise to make herself available." The Law Firm alleges that Martin's breach of the oral contract resulted in injury to it "in excess of $682.66."

5

**B. The Law Firm's fraud claims**

In its fraud claims, the Law Firm contends that Porter-Garcia and Martin represented on numerous occasions "that [they were] aware that [they] had been paid for time that [they] had not actually worked" and that they "would make up these days in the future." The Law Firm alleges that they knew their representations were false. As proof, the Law Firm argues that the women allegedly said that they would make up the time but did not. As to Porter-Garcia, the law firm also contends that, after she resigned, she requested payment for two additional days. And as to Martin, the Law Firm points to her failure to maintain "documentation for absences of employees at the Travis Law Firm, including her own." The Law Firm contends that it relied on their representations—that without them, the "Law Firm would not have paid" for time that they did not work. And the Law Firm alleges that it suffered injury by paying for time not worked.

**C. The Law Firm's theft claims**

The Law Firm alleges that Porter-Garcia and Martin violated the Theft Liability Act, "appropriating" Law Firm property "with the intent to deprive" by:

> receiving the benefits and wages for time that [they] had not worked, promising the Travis Law Firm that [they] would make-up time in the future, and then continually and repeatedly lying about [their] deception and false representations that led to [their] obtaining the property from Travis Law Firm without the Travis Law Firm's effective consent.

6

The Law Firm further asserts that both women "lied to get benefits and wages from [the] Travis Law Firm that [they] w[ere] not entitled to, and [they] continued to lie about [their] obligations to [the] Travis Law Firm showing [their] intention all along of depriving Travis Law Firm of its property."

## D.  Porter-Garcia's and Martin's TCPA motions to dismiss

Porter-Garcia and Martin moved to dismiss the Law Firm's contract, fraud, and Theft Liability Act claims,[2] arguing that the TCPA applied to bar these claims because (1) they are based on, relate to, or are in response to their exercise of the right to petition the TWC to resolve their wage disputes with the Law Firm, and (2) the Law Firm could not satisfy its burden to establish by clear and specific evidence a prima facie case for any of its claims (or, even if it had, they established valid defenses against each of the claims).

Both Porter-Garcia and Martin attached affidavits to their motions to dismiss. In them, they each averred that:

- When they resigned from the Law Firm, it still owed them wages for hours that they had worked.

- Because the Law Firm refused to pay them for their work, they filed wage claims with the TWC.

- The TWC determined that the Law Firm owed $439.32 to Porter-Garcia and $682.66 to Martin.

---

[2] In its live petition, the Law Firm also seeks judicial review of the Texas Workforce Commission's determinations. Those determinations are not a subject of the motions to dismiss or at issue in this appeal.

- They did not enter into oral or written contracts concerning their employment with the Law Firm.

- They believed that the Law Firm's claims were made in retaliation for their TWC claims.

Martin also averred that, during the investigation of the TWC wage claim, an agent of the Law Firm told her that "he would sue [her] for various claims if [she] continued with the claim."

## E. The Law Firm's responses to Porter-Garcia's and Martin's TCPA motions to dismiss

The Law Firm responded that the TCPA is inapplicable to its claims. It asserted that it filed a "meritorious lawsuit for a demonstrable injury" that "in no way impact[s] or discourage[s] [Porter-Garcia's and Martin ]'s 'constitutional rights to petition the government.'"

The Law Firm attached affidavits from John D. Woods, an attorney at the Law Firm, in which he averred:

- Martin began her employment with the Law Firm on September 24, 2014, and Porter-Garcia started work on July 27, 2015. The "last date on which [either] performed any work for Travis Law Firm was on September 4, 2015."

- Woods was present during each of Porter-Garcia's and Martin's interviews with the Law Firm when they agreed to the Law Firm's policy that they "would not be entitled to any paid time-off, including but not limited to, sick days, personal days, holidays, or other non-compensable time off from work until [they] worked ninety (90) days with Travis Law Firm." Also, only "[u]pon completion of working ninety (90) days with Travis Law Firm" would they be "entitled to three (3) days of paid sick leave."

8

- They agreed that if they did not work a full eight hours per day, the Law Firm would still pay them as if they had worked a full eight-hour day, but they were required to make up the time later.

- They breached the oral contract "by accepting payment for days that [they] did not work and not subsequently making up the time at a later date."

- They "further breached the contract by seeking to be paid for additional days of work after the conclusion of [their] employment."

- The Law Firm's claims were not made in retaliation for their "participation in the Texas Workforce Commission wage claim investigation."

The Law Firm also attached pay records.

## Motion to Dismiss Under the TCPA

In both of their sole issues, Porter-Garcia and Martin contend that the trial court erred by denying their motions to dismiss. They argue that (1) the Law Firm's claims are based on, relate to, or are in response to their exercise of the right to petition; (2) the Law Firm did not establish by clear and specific evidence a prima facie case for each of its claims; and, (3) even if it had, their defenses bar the Law Firm's claims. We agree that the trial court erred in failing to dismiss the Law Firm's claims for fraud and civil theft. We disagree, however, on breach of contract.

## A. Standard of Review and Applicable Law

This case arises under the TCPA, often called an "anti-SLAPP" statute. We review de novo a trial court's ruling on a motion to dismiss under the TCPA.

*Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 892 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We interpret the TCPA in accordance with its express statutory language. *See Jordan v. Hall*, 510 S.W.3d 194, 197 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "[O]rdinary citizens should be able to rely on the plain language of a statute to mean what it says." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

The TCPA provides: "If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE § 27.003(a). The statute establishes a procedure whereby parties have an opportunity to show whether claims relate to or are in response to the exercise of protected rights, including the right to petition. *See id.* § 27.003(a)–(c). This procedure does not require parties to marshal all of their evidence at the motion to dismiss stage. *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding).

A party seeking dismissal under the TCPA bears the initial burden of "show[ing] by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b). If the moving party meets this burden, then the burden shifts to the nonmovant to

establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). This standard differs from mere notice pleading required by the Rules of Civil Procedure. *See Lipsky*, 460 S.W.3d at 590–91. But the TCPA "does not impose an elevated evidentiary standard." *Id.* at 591. Instead, it requires "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *See id.* at 590. Put differently, "a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591.

If the nonmovant establishes his or her prima facie case, the burden shifts back to the movant, who may obtain dismissal by establishing "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE § 27.005(d). In conducting our review, we consider the pleadings and evidence in a light favorable to the nonmovant. *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 685 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

## B.    Analysis

### 1.    Does the TCPA apply?

Yes, both Porter-Garcia and Martin met their initial burdens of showing by a preponderance of the evidence that the TCPA applies. As set forth above, the TCPA applies to a legal action that is "based on, relates to, or is in response to a

party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE § 27.003.

The TCPA broadly defines "[e]xercise of the right to petition" to include a communication pertaining to a judicial, official, or governmental department proceeding, such as the TWC proceeding here. *See id.* § 27.001(4)(A). Specifically, the statutory definition includes (among other things) "a communication in or pertaining to" "a judicial proceeding," "an official proceeding, other than a judicial proceeding, to administer the law," or a "proceeding before a department of the state or federal government or a subdivision of the state or federal government," as well as "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." *Id.* § 27.001(4)(A), (B).

"Courts must adhere to legislative definitions of terms when they are supplied," *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018), and Porter-Garcia and Martin have made the requisite showing, for these purposes, that their TWC communications satisfy the TCPA's statutory definition of "right to petition." *See id.* at 681 (TCPA applied to alleged liability stemming from dictation of Rule 11 agreement into court record); *James v. Calkins*, 446 S.W.3d 135, 147–48 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Tervita, LLC v. Sutterfield*, 482

12

S.W.3d 280, 283–84 (Tex. App.—Dallas 2015, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE § 27.001(4) and concluding that Sutterfield's contested case hearing before Texas Department of Insurance, Division of Worker's Compensation, was qualifying governmental proceeding for "petition" purposes); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("The TCPA casts a wide net.").

Similarly, Porter-Garcia and Martin made the requisite showing that the instant lawsuits are based on, relate to, or are in response to their right to petition. The TCPA's "is based on, relates to, or is in response to" language captures, at a minimum, a "legal action" that is factually predicated upon or relates to alleged conduct that would fall within the TCPA's definition of exercise of the right to petition. *See Adams*, 547 S.W.3d at 894. Thus, the TCPA covers, for instance, a lawsuit that relates to "a communication in or pertaining to: . . . an official proceeding, other than a judicial proceeding, to administer the law" or a "proceeding before a department of the state or federal government or a subdivision of the state or federal government." *See* TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(ii), (iii).

Porter-Garcia and Martin argue that (1) the direct result of their TWC claims was that the Law Firm owed them $439.32 and $682.66, respectively, for unpaid wages and (2) as damages in these lawsuits, the Law Firm seeks the amount of

13

back wages awarded by the TWC. In other words, had they "not filed the wage claim[s], the Firm would not have been legally compelled to pay the unpaid wages" and "thus there is a direct connection between the damages claimed by the Firm in its breach of contract, fraud, and theft claims and [the] administrative proceeding conducted by [the] TWC." Moreover, Martin averred that "[d]uring the investigation of the wage claim, an agent of the [Law Firm] stated to [her] that he would sue [her] for various claims if [she] continued with [her] claim."

The Law Firm's first amended petitions support Porter-Garcia's and Martin's contentions that the Law Firm's claims are based on, relate to, or are in response to their wage actions before the TWC.[3] The Law Firm seeks the return of wages that the Law Firm asserts it wrongfully paid to Porter-Garcia and Martin. Moreover, in support of its claims, the Law Firm references Porter-Garcia's and Martin's post-resignation efforts to collect wages.[4]

---

[3]    We focus our review on the Law Firm's live pleadings.

[4]    In support of its breach-of-contract claims, the Law Firm alleged that Porter-Garcia and Martin "breached the[ir] contract[s] by seeking to be paid for additional days of work after the conclusion of [their] employment." Further, in support of its theft claims against both women, the Law Firm alleges that they "lied to get benefits and wages from Travis Law Firm that [they] were not entitled to, and [they] continue to lie about [their] obligations to Travis Law Firm showing [their] intention all along of depriving Travis Law Firm of its property."

14

Porter-Garcia and Martin met their burden of showing, for these purposes, that the TCPA applies.[5]

## 2. Did the Law Firm establish by clear and specific evidence a prima facie case for each element of its claims?

Yes for breach of contract, but no for the Law Firm's other claims. Because Porter-Garcia and Martin satisfied their initial burden under the TCPA, the burden shifted to the Law Firm to establish "by clear and specific evidence a prima facie case for each essential element of" its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c). Accordingly, we examine the pleadings and the evidence in a light favorable to the Law Firm to determine whether it marshaled "clear and specific evidence" to support each element of its claims. *See id.* §§ 27.005(c), 27.006(a); *Lipsky*, 460 S.W.3d at 587; *Deuell*, 508 S.W.3d at 685.

---

[5] The TCPA's text and recent case law preclude the dissent's narrower view of the TCPA's application.

> It does not follow from the fact that the TCPA professes to safeguard the exercise of certain First Amendment rights that it should *only* apply to constitutionally guaranteed activities. Because the Legislature explicitly defined the term "exercise of the right to petition," injecting such a requirement into the TCPA would be disloyal to its enacted text. Whether that definition maps perfectly onto the external constitutional rights it aims to protect is irrelevant; we are bound by the statutory definition for the purposes of the TCPA.

*Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (emphasis in original); *see also Collins v. Collins*, No. 01-17-00817-CV, 2018 WL 1320841, at *4 (Tex. App.—Houston [1st Dist.] Mar. 15, 2018, pet. filed) (mem. op.) (interpreting "[e]xercise of the right to petition" according to what it plainly says does not lead to absurd result).

15

Neither the TCPA nor the common law defines "clear and specific evidence"; consequently, we give these terms their ordinary meaning. *Lipsky*, 460 S.W.3d at 590. "Clear" means "free from doubt," "sure," or "unambiguous." *Lipsky*, 460 S.W.3d at 590 (citing this definition of "clear" from BLACK'S LAW DICTIONARY). "Specific" means "explicit" or "relating to a particular named thing." *Id.* (citing this definition of "specific" from BLACK'S LAW DICTIONARY). "The term 'clear and specific evidence' refers to the quality of evidence required to establish a prima facie case, while the term 'prima facie case' refers to the amount of evidence required to satisfy the nonmovant's minimal factual burden." *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 799 (Tex. App.—Austin 2017, pet. filed).

"[Prima facie case] refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. Although this standard exceeds mere notice pleading, it requires only the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *See id.* at 590–91 ("Though the TCPA initially demands more information about the underlying claim, the Act does not impose an elevated

16

evidentiary standard or categorically reject circumstantial evidence."); *Warner Bros. Entm't*, 538 S.W.3d at 799.[6]

Thus, we must decide whether the pleadings and affidavits contain a minimum quantum of clear and specific evidence necessary to support a rational inference establishing each essential element of the Law Firm's claims. We address each of the Law Firm's claims in turn.

### a. Breach of contract

The elements of a claim for breach of an oral contract are (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach, and (4) the plaintiff's damages as a result of the breach. *See Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Porter-Garcia and Martin argue that the Law Firm failed to present sufficient evidence of a valid contract or damages. They do not challenge the Law Firm's position that it performed under the contract or, to the extent that the Law Firm's alleged oral contract existed, that they breached the terms of that contract.

---

[6] For instance, "[i]n a defamation case that implicates the TCPA, pleadings and evidence that establish[] the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591.

### i.  Existence of a valid contract

Porter-Garcia and Martin deny that the parties entered into an oral contract. To establish the existence of a valid contract, a party must establish (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.* "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications." *Id.*

The Law Firm submitted Woods's affidavit in which he averred the following:

- He personally witnessed Porter-Garcia and Martin agree to the Law Firm's policy that they "would not be entitled to any paid time-off, including but not limited to, sick days, personal days, holidays, or other non-compensable time off from work until [they] worked ninety (90) days with Travis Law Firm."

- Porter-Garcia and Martin agreed to the term that, "[u]pon completion of working ninety (90) days with Travis Law Firm, [they] would have been entitled to three (3) days of paid sick leave."

- They agreed that if they did not work a full eight hours per day, the Law Firm would still pay them as if they had worked a full day, but they were required to make up the time later.

- Woods was present when Porter-Garcia and Martin agreed to this payment arrangement.

Woods's testimony provides clear and specific evidence, for these purposes, of a prima facie case of the existence of a contract. It sets forth evidence of an offer

by the Law Firm to pay for missed time in exchange for that time being made up at a later date. It provides that both Porter-Garcia and Martin accepted the terms of the agreements. Similarly, it asserts that both parties consented to the terms of the agreements with the mutual intent to be bound by the agreements' terms. As such, the Law Firm met its burden of establishing, for these purposes and with the evidence construed in its favor, the existence of valid and enforceable oral agreements. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Lipsky*, 460 S.W.3d at 590 (prima facie case requires only minimum quantum of evidence necessary to support rational inference that allegation of fact is true).

Porter-Garcia and Martin argue that the existence of any oral contract requiring them to make up missed time contravenes the law and the Law Firm's written policies requiring any agreement contrary to the at-will-employment standard to be in writing. But we have no basis to conclude that the purported agreements changed their at-will status. *See, e.g.*, *Gonzalez v. Methodist Charlton Med. Ctr.*, No. 10-11-00257-CV, 2011 WL 6091255, at *8–10 (Tex. App.—Waco Dec. 7, 2011, no pet.) (mem. op.) (holding that tuition-reimbursement agreement between sonography student and hospital did not "unequivocally manifest[] a definite intent on behalf of [hospital] to modify or alter the at-will employment relationship between it and [student] in a meaningful or special way").

19

Porter-Garcia and Martin also argue that the statute of frauds renders the alleged oral payment agreements unenforceable. But the statute of frauds would render the alleged oral payment agreements unenforceable only if they could not be performed within one year, and an "employment contract for an indefinite term is considered performable within one year." *See Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998). Here, the payment agreements, as alleged, could have been performed within one year. *See id.*; *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 776 (Tex. 1974) (where contract to pay employee bonus after about one year could theoretically be performed before year expired, statute of frauds did not apply); *Young v. Ward*, 917 S.W.2d 506, 509 (Tex. App.—Waco 1996, no writ). Thus, on this record, the statute of frauds did not render the alleged agreements unenforceable.

### ii. Performance by the Law Firm

The Law Firm submitted Woods's testimony that it performed "by paying [Porter-Garcia and Martin] for all of the days that [they] worked, as well as for days that [they] did not work and w[ere] not eligible for paid time-off." Porter-Garcia and Martin have not challenged the Law Firm's assertion that it performed under the terms of the alleged oral agreements. Accordingly, we conclude, for these purposes, that the Law Firm offered clear and specific evidence supporting a

prima facie case of performance under the agreements. *See Lipsky*, 460 S.W.3d at 590.

### iii.  Breach by Porter-Garcia and Martin

Porter-Garcia and Martin also have not challenged the assertion that, if the parties orally agreed to the terms alleged by the Law Firm, they breached the terms of those agreements. Woods averred that he had personal knowledge of Porter-Garcia's and Martin's absences, and he contended that they did not make up their missed time. The Law Firm offered clear and specific evidence supporting a prima facie case of breach of the alleged oral agreement. *See Lipsky*, 460 S.W.3d at 590.

### iv.  Damages

Porter-Garcia and Martin argue that the Law Firm failed to allege sufficient specific damages. We disagree. The Law Firm submitted Woods's testimony that its damages could be measured by "out-of-pocket financial injury to Travis Law Firm from the monies paid to [them] for time that [they] did not work. . . . [T]he injury is in excess of $682.66" as to Martin and "$500.00" as to Porter-Garcia. The Law Firm submitted their pay records, which reflect their pay rates, and the Law Firm alleged the number of days for which it seeks reimbursement. It thus provided a quantifiable method to calculate damages. This constitutes clear and specific evidence supporting a prima facie case: "[P]laintiff . . . provide[s] enough detail to show the factual basis for its claim." *See Lipsky*, 460 S.W.3d at 591;

21

*Schlumberger*, 472 S.W.3d at 894–95 (testimony regarding diminished value of investments and request for specific performance constituted clear and specific evidence of actual damages from alleged breach of contract).

### b. Fraud

The Law Firm did not establish by clear and specific evidence a prima facie case for each essential element of fraud. The elements of fraud are:

(1) the defendant made a material misrepresentation,

(2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth,

(3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation, and

(4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

*Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011); *accord James*, 446 S.W.3d at 148 (same).

The Supreme Court has concluded that the "clear and specific" evidentiary standard does not exclude circumstantial evidence—i.e., "indirect evidence that creates an inference to establish a central fact." *Lipsky*, 460 S.W.3d at 589. And Texas law acknowledges that "intent to defraud is not susceptible to direct proof [and] invariably must be proven by circumstantial evidence." *Id.* at 588 (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)).

22

Where, as here, the allegedly fraudulent representation involves a defendant's promise of future performance, mere breach of contract or failure to perform is not, standing alone, evidence of fraud. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998); *Chevron Phillips Chem.*, 346 S.W.3d at 66. Breach "combined with 'slight circumstantial evidence'" may demonstrate that the promisor intended to defraud or had knowledge of the falsity of her representations when made. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006); *see Spoljaric*, 708 S.W.3d at 435.

But for circumstantial evidence to establish any material fact, including knowledge or intent, there must be "a logical bridge between the proffered evidence and the necessary fact." *IKON Office Sols., Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Although circumstantial evidence may be used to establish any material fact, it must transcend mere suspicion." (quotation omitted)). Fraud cannot be inferred from the "vague, indefinite, and inconclusive" testimony of interested witnesses. *Lipsky*, 460 S.W.3d at 588–89 (circumstantial evidence "is admissible unless the connection between the fact and the inference is too weak to be of help in deciding the case."). And evidence "so weak that it creates only a mere surmise or

suspicion" of intent not to perform "constitutes no evidence." *Chevron Phillips Chem.*, 346 S.W.3d at 66 (citation omitted).

The Law Firm's evidence is silent about whether Porter-Garcia and Martin knew, at the time, that their alleged promises to make up missed work time were false. No evidence shows they had the present intent to deceive, and no intention of performing, when they allegedly represented to the Law Firm that they would make up missed time.

The Law Firm repeats its breach of contract allegations. It contends that Porter-Garcia and Martin committed fraud by representing that they would make up missed time and then failing to do so. It is well settled, however, that evidence of an alleged failure to perform alone is insufficient to support a claim of fraud. *See, e.g.*, *Formosa*, 960 S.W.2d at 48; *Chevron Phillips Chem.*, 346 S.W.3d at 66.

As other alleged "evidence" concerning Porter-Garcia, Woods averred that her resignation letter stated that she should be paid for September 1–4, 2015, but she later (post-resignation) demanded payment for September 7–8 too. This does not constitute slight circumstantial evidence of knowledge or fraudulent intent at the time Porter-Garcia allegedly represented that she would make up missed time. As explained, evidence "so weak that it creates only a mere surmise or suspicion" of intent not to perform is no evidence, and fraud cannot be inferred from "vague, indefinite, and inconclusive" testimony. *Chevron Phillips Chem.*, 346 S.W.3d at

24

66; *see also Lipsky*, 460 S.W.3d at 588–89; *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992). Although "subsequent acts" may shed light on prior fraudulent intent, *see Spoljaric*, 708 S.W.2d at 434, Porter-Garcia's post-resignation payment request for wages for two additional days does not suggest that she made any alleged pre-resignation representations about making up missed work time with knowledge that her representations were false. There is no "logical bridge between the proffered evidence and the necessary fact." *IKON*, 125 S.W.3d at 130–31.

So too for Martin. The Law Firm (and Woods) alleged that she was tasked with documenting employee absences yet failed to do so. The Law Firm contends that this constitutes evidence that she knew, at the time of her alleged representations that she would make up missed time, that the representations were false. But there is again no "logical bridge between the proffered evidence and the necessary fact." *Id.* The Law Firm does not explain (or produce evidence about) the relationship between the alleged task of recording employee absences and a separate alleged promise to make up her missed time. The Law Firm also included no explanation of when Martin allegedly failed to track employee absences, when she allegedly misrepresented that she would make up missed work time, and how the two were temporally related. The evidence creates no more than a mere surmise or suspicion as to Martin's knowledge or intent at the time of her alleged

25

representations. *See id.* ("IKON's post-acquisition conduct does not provide more than a scintilla of evidence IKON did not intend to perform under the Agreements at the time it entered into them. The conduct Eifert cites is not material to the specific promises created by the job description . . . ."); *Chevron Phillips Chem.*, 346 S.W.3d at 66.

We cannot conclude that Porter-Garcia's post-resignation payment request or Martin's alleged failure to track employee absences creates an inference—much less one constituting clear and specific evidence supporting a prima facie case—that the appellants knew, at the time, that any alleged representations about making up missed time were false (or relatedly that they made the representations with fraudulent intent). *See IKON*, 125 S.W.3d at 130–31; *see also Lipsky*, 460 S.W.3d at 588–93 (although affidavit states that Range "suffered direct pecuniary and economic losses," it is devoid of any specific facts illustrating how Lipsky's alleged remarks about Range's activities actually caused such losses); *Burbage v. Burbage*, 447 S.W.3d 249, 262 (Tex. 2014) (jury could not reasonably infer that cancellations for a funeral home business were caused by defamation when any number of reasons could have caused the cancellations); *T.O. Stanley*, 847 S.W.2d at 222; *Chevron Phillips Chem.*, 346 S.W.3d at 66 (citation omitted) ("Because CP Chem's denial of the promise is insufficient to demonstrate intent not to perform, Kingwood CrossRoads cites no evidence that, coupled with CP Chem's failure to

perform, constituted "slight circumstantial evidence" and created more than "mere surmise or suspicion" of intent not to perform).

Because the Law Firm failed to establish by clear and specific evidence a prima facie case of fraud, the trial courts erred by denying appellants' motions to dismiss as those claims.

### c.      Violations of the Theft Liability Act

The Law Firm's Theft Liability Act claims similarly fall short. The Act provides a civil remedy for damages sustained by a theft victim. *See* TEX. CIV. PRAC. & REM. CODE §§ 134.002(2), 134.003(a), 134.005. Under the Act, "theft" means "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03 . . . Penal Code." *Id.* § 134.002(2). Penal Code section 31.03 provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Appropriation, as relevant here, means to exercise control over property, and it is unlawful when it is without the owner's effective consent. TEX. PENAL CODE §§ 31.01(4), 31.03(b)(1).

When a claim of theft is made in connection with a contract, there must be "proof of more than an intent to deprive the owner of property and subsequent appropriation of the property." *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012). The additional evidence must show that the appropriation was a result

27

of a false pretext or fraud. *Id.*; *see also Arcturus Corp. v. Espada Operating, LLC*, 2016 WL 4272381, at \*5 (Tex. App.—Corpus Christi Aug. 11, 2016, no pet.) (mem. op.) (analyzing civil theft); *Jacobs v. State*, 230 S.W.3d 225, 229–30 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("If no more than intent and appropriation is shown in a contract claim, nothing illegal is apparent, because under the terms of [a contract] individuals typically have the right to 'deprive the owner of property,' albeit in return for consideration.") (citation omitted).

Woods averred that both Porter-Garcia and Martin unlawfully appropriated the money that the Law Firm paid them in wages by deceiving the Law Firm to obtain it. He described their deception as lying about intending to make up missed work time so that they could be paid for the missed time now. This is the same factual basis that the Law Firm provided regarding its fraud claims, and for the reasons that the Law Firm failed to make a prima facie case of fraud by clear and specific evidence, it likewise fails to make a prima facie case of theft by clear and specific evidence. *See Wirth*, 361 S.W.3d at 697; *Arcturus*, 2016 WL 4272381, at \*9 (theft liability claims failed: "Arcturus points to no evidence in the record that shows either Espada, Bengal, Michelson, or Billington retained Arcturus's payment pursuant to the forbearance letter but also knew it was not entitled to the money.").

To the extent the Law Firm relies on the wages awarded by the TWC for its theft claim, these wages were not "unlawfully appropriate[d]." *Cf.* TEX. PENAL CODE § 31.03(a). Rather, the TWC determined that Porter-Garcia and Martin were legally entitled to the wages awarded them. Plus, the Law Firm presented no evidence that it has paid the wages. *See* TEX. PENAL CODE § 31.01(4)(A), (B) (property is appropriated once it is transferred or acquired).

Because the Law Firm failed to establish by clear and specific evidence a prima facie case under the Theft Liability Act, the trial courts erred by denying appellants' motions to dismiss as those claims.

\* \* \*

Viewing the evidence in a light favorable to the Law Firm, and applying the standard set forth in the TCPA and binding case law, we conclude that the Law Firm met its burden to proceed with its breach of contract claims but not its claims for fraud and theft. The burden shifts back to Porter-Garcia and Martin on the contract claims, and we must determine if they proved any of their defenses by a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c), (d).

**3.     Have Porter-Garcia and Martin established any of their defenses by a preponderance of the evidence?**

No. Porter-Garcia and Martin have not established their defenses by a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d). On

appeal, they allege two defenses to the contract claims: waiver and ratification.[7]

### a. Waiver

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).

Porter-Garcia and Martin argue that if the Law Firm "actually intended to deprive [them] of pay in connection with sick days, holidays, or other miscellaneous days, the time to do that would have been during and for the applicable pay period, not months later when [they] ultimately resigned." In support, they argue that the Labor Code requires agreements to withhold wages to be in writing. *See* TEX. LAB. CODE § 61.018(3). The Law Firm responds that it never agreed to waive its right to have Porter-Garcia and Martin make up the days that they missed. The Law Firm further argues that the TWC was barred from considering the firm's claims and could address only the narrower issue of whether it was entitled to withhold wages from Porter-Garcia's and Martin's paychecks.

On this record and for these purposes, Porter-Garcia and Martin have failed to establish by a preponderance of the evidence that the Law Firm intentionally waived its right, under the parties' alleged oral agreements, to have Porter-Garcia

---

[7] Because the Law Firm failed to carry its burden under Civil Practice and Remedies Code section 27.005(c) for any claim except breach of contract, we need not reach Porter-Garcia's and Martin's defenses to other claims. *See* TEX. R. APP. P. 47.1.

and Martin make up work time that they missed. *See Ulico Cas.*, 262 S.W.3d at 778.

### b.    Ratification

A party asserting a ratification must establish (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intention of giving validity to the earlier act. *Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ).

As with their waiver defenses, Porter-Garcia and Martin argue that if the Law Firm "intended to reduce [their] pay for those hours [they] missed work due to illness or other appointment, the time to do so would have been each work week during which [they] took time off."

The Law Firm does not contend that it intended to "reduce [Porter-Garcia's and Martin's] pay for those hours [they] missed" but rather that Porter-Garcia and Martin agreed to make up the missed time later. Porter-Garcia and Martin have not established by a preponderance of the evidence that the Law Firm approved (through its acts, words, or conduct) their failure to make up missed time.

## Conclusion

We affirm the trial courts' orders insofar as they denied Porter-Garcia's and Martin's motions to dismiss the Law Firm's breach of contract claims. We reverse as to fraud and theft, and we remand to the trial courts for dismissal of those claims and consideration of additional relief under Texas Civil Practice and Remedies Code section 27.009. We remand the cases to the trial courts for further proceedings.


Jennifer Caughey

Justice


Panel consists of Justices Jennings, Massengale, and Caughey.

Jennings, J., concurring in part in the judgment and dissenting in part