**Opinion issued December 2, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00120-CV

———————————

**ELVIS LEYVA AND LEYVA IRON WORKS, INC., Appellants**

**V.**

**AMERICAN COMPLETION TOOLS, INC., Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-18213**

---

## MEMORANDUM OPINION

Appellee, American Completion Tools, Inc. (ACT), sued appellants Elvis Leyva and Leyva Iron Works, Inc. (the Leyva parties) and other defendants for numerous causes of action, including fraud and violations of the Texas Theft Liability Act, to compete with ACT in selling tools or to sell stolen ACT products.

The Leyva parties moved to dismiss ACT's claims against it pursuant to the Texas Citizens Participation Act (TCPA). The trial court denied the Leyva parties' motion. The Leyva parties now argue in their sole issue that the trial court erred denying the TCPA motion to dismiss because the TCPA applies to all of ACT's claims against them, the commercial-speech exemption set out in the TCPA does not apply to ACT's claims, and ACT failed to make a prima facie case on each element of each of its claims against them. Because we conclude that the commercial-speech exemption applies to ACT's claims against the Leyva parties, we affirm.

## Background

ACT is in the business of designing, manufacturing, and selling tools for use in the oil industry. According to its pleadings, ACT "manufactures many of its own products and distributes products manufactured by a company related to ACT— foreign manufacturer Parveen Industries PVT. LTD. ('Parveen')." In a previous, related appeal we set out the facts of this case. *See Blaze Sales & Servs., Inc. v. Am. Completion Tools, Inc.*, No. 01-19-00497-CV, 2020 WL 1917842, *1–2 (Tex. App.—Houston [1st Dist.] Apr. 21, 2020, pet. denied) (mem. op.).

ACT sued the Leyva parties, along with other defendants including three of ACT's former employees, Akhil Sharma, Rupak Jha, and Ankush Yadav; associates of those former employees Abriana Brito and Paul Abad; and associated

2

businesses Blaze Sales and Texas Tools. *See id.* ACT alleged that the former employees breached their employment agreements and engaged in fraud. ACT further alleged that Blaze Sales, Texas Tools, and Leyva Iron Works, along with their directors, Paul Abad, Abriana Brito, and Elvis Leyva, respectively, engaged in the fraudulent conduct in concert with the former employees.

Relevant here, ACT alleged that Elvis Leyva is a long-time friend of Paul Abad's. It asserted that Leyva Iron Works sought to do business with ACT through former employee Jha, and that when ACT employees contacted Leyva Iron Works, they spoke to Paul Abad, who held himself out as a representative of Leyva Iron Works. ACT specifically alleged:

> In July 2018, while still an ACT employee, Defendant Sharma represented to ACT that yet another new customer—Defendant Leyva Iron Works, Inc.—wanted to buy products from ACT. Sharma again represented to ACT that in order to make the sales, ACT needed to reduce its customary market price to match a competitor's price for the same equipment. From July of 2018 to present, Sharma had ACT sell approximately $120,000 in ACT products, mostly PUP joints, to Leyva Iron Works, Inc. Defendant Jha later credited Leyva's account in ACT's computer system with a return of these products, something outside his normal job duties, but these products were never actually returned and are missing from ACT's warehouse. Therefore, based on information and belief, Defendants Sharma, Jha and Yadav are associated with Defendant Leyva Iron Works, Inc. Defendant Leyva Iron Works, Inc. was formed as an entity on May 21, 2018. Defendant Elvis Leyva is listed as the sole director of Leyva Iron Works, Inc. and on information and belief he is a co-worker of Paul Abad. The business address for Defendant Leyva Iron Works, Inc. given to the Secretary of State is a residential home owned by Elvis Leyva. ACT asserts that Defendant Leyva Iron Works, Inc. is a sham corporation formed for the use of Defendants Sharma, Jha, and/or Yadav to sell

ACT products either stolen or obtained at below-market prices as a result of Defendants' fraud.

ACT alleged that Leyva's company, Leyva Iron Works, was created as "sham corporation formed solely for the use of the Former Employees and Paul Abad to sell stolen ACT products."

ACT alleged causes of action against all defendants—including the Leyva parties—for misappropriation of trade secrets, asserting that they "acquired trade secrets by improper means" and then "used ACT's trade secrets without ACT's authorization." ACT asserted that all defendants, including the Leyva parties, aided and abetted fraud: "with knowledge of the other Defendants' fraudulent acts, provided substantial assistance to advance the commission of the fraud by the other Defendants." ACT further alleged that all defendants aided and abetted the former employees' breach of fiduciary duty, and it asserted that all defendants tortiously interfered with commercial relations: "all Defendants have sold stolen [products] or aided and abetted in the theft of ACT products and also sold ACT products purchased at significantly discounted prices under false pretenses to third party customers." ACT asserted that all defendants, including the Leyva parties, violated the Texas Theft Liability Act, alleging that the former employees stole ACT's property "and the remaining Defendants appropriated the property knowing it was stolen by Sharma, Jha, and/or Yadav." Finally ACT alleged causes of action for civil conspiracy and unjust enrichment. ACT asserted that the "Defendants Blaze

4

Sales and Services, Inc. and Leyva Iron Works, Inc. are the alter egos of Defendants Paul Abad and Elvis Leyva respectively" and that those companies are "also the alter egos of Defendants Sharma, Jha, and/or Yadav."

The former employees, Blaze Sales, Texas Tools, and individual defendants Abad and Brito filed a joint motion to dismiss pursuant to the TCPA. The trial court denied this motion to dismiss, and these parties appealed that ruling to this Court. We affirmed the trial court's denial on the ground that the commercial-speech exemption applied to ACT's claims against the former employees and related parties. *See id.* The Leyva parties were not parties to that appeal.

In a separate motion, the Leyva parties moved to dismiss all of ACT's claims against them pursuant to the TCPA. In their motion to dismiss, the Leyva parties argued that the TCPA as it existed when the motion was filed in May 2019 applied to all of ACT's claims against them because the pleadings implicated the Leyva parties' right of free speech and right of association as defined in the TCPA. The Leyva parties also asserted that ACT could not make a prima facie claim based on each of its claims, and they argued that the commercial-speech exemption did not apply to ACT's claims against them.

The trial court denied the motion to dismiss. This appeal followed.

## TCPA

In their sole issue on appeal, the Leyva parties assert that the trial court erred in denying their TCPA motion to dismiss.

### A.      Statutory Scheme & Standard of Review

The TCPA, as it was in effect at the time this motion was filed, allowed a party to file a motion to dismiss a "legal action" that is "based on, relates to, or is in response to a party's exercise of" the rights of free speech, petition, or association.[1] FORMER TEX. CIV. PRAC. & REM. CODE § 27.003(a); *see also id.* § 27.001(2)–(4) (defining exercise of right of association, free speech, and petition). It established a burden-shifting statutory scheme whereby, after a movant meets its initial burden to establish that the TCPA applies to the legal action, the burden shifts to the nonmovant, who must establish by clear and specific evidence a "prima facie case for each essential element of the claim in question." *Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at *4; FORMER TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1)(A)–(C), (c).

However, a plaintiff can avoid the TCPA's burden-shifting requirements by showing that one of the act's several exemptions applies. *See* FORMER TEX. CIV. PRAC. & REM. CODE § 27.010; *N. Cypress Med. Ctr. Operating Co. GP v. Norvil*,

---

[1]      All references to the TCPA are to the version that was in effect in May 2019 when the underlying motion was filed. The TCPA was amended effective September 1, 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. For ease of reference, we refer to the version in effect prior to September 1, 2019, as the "Former" version of the statute.

580 S.W.3d 280, 284 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (also stating, "If an exemption applies, the trial court has no choice but to deny the motion"); *Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at *4. Among these exemptions is the commercial-speech exemption. FORMER TEX. CIV. PRAC. & REM. CODE § 27.010(b); *Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at *4. This exemption provides that the TCPA does not apply to a suit against a defendant who is "primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or . . . a commercial transaction in which the intended audience is an actual or potential buyer or customer." FORMER TEX. CIV. PRAC. & REM. CODE § 27.010(b). The party asserting the commercial-speech exemption has the burden to prove by a preponderance of the evidence that the exemption applies to the communications at issue. *Schmidt v. Crawford*, 584 S.W.3d 640, 653 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 83 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). We consider the pleadings and the evidence in a light favorable to the nonmovant. *Id.* at 84; *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

## B.    Commercial-Speech Exemption

The Leyva parties moved for dismissal of ACT's claims against them on the basis that the TCPA applied because the alleged conduct and communications implicated their rights of free speech and association as defined in the TCPA. ACT, however, asserted, in part, that the TCPA did not apply to its challenged claims because they fall under the commercial-speech exemption. We agree with ACT.

As stated above, the commercial-speech exemption provides:

[The TCPA] does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

FORMER TEX. CIV. PRAC. & REM. CODE § 27.010(b); *Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at *5. The Supreme Court of Texas has identified four elements to this exemption:

(1) the defendant was primarily engaged in the business of selling or leasing goods [or providing services], (2) the defendant made the statement or engaged in the conduct on which the claim is based in its capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services that the defendant provides, and (4) the intended audience of the statement or conduct [was] actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 479 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd).

As the party asserting the commercial-speech exemption, ACT bore the burden to prove its application by a preponderance of the evidence. *See Schmidt*, 584 S.W.3d at 653; *Schimmel v. McGregor*, 438 S.W.3d 847, 857 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). In determining whether ACT met this burden, we consider the pleadings and record evidence. *See* FORMER TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (stating that plaintiff's petition is "the best and all-sufficient evidence of the nature of the action" to show TCPA's application to plaintiff's claims); *The Pinkerton Law Firm, PLLC v. Univ. Cancer Ctr.*, No. 01-19-00089-CV, 2020 WL 97173, at *3–4 (Tex. App.—Houston [1st Dist.] Jan. 9, 2020, pet. denied) (mem. op.) (analyzing allegations in live pleading to determine application of commercial-speech exemption).

We conclude that the facts as alleged in ACT's petition against the Leyva parties satisfy all four *Castleman* elements.

### 1.     *The Leyva parties engaged in the business of selling goods*

The pleadings indicate that Leyva Iron Works, through its director Elvis Leyva, was a corporation that did business with ACT and with the other

defendants, including Paul Abad. ACT alleged that the Leyva parties, acting in concert with the former employees, Paul Abad, and the related entities, defrauded ACT and "sold ACT products purchased at significantly discounted prices under false pretenses to third party customers."

The Leyva parties argue that the "sum total of [ACT's] allegations against Leyva Iron Works is that Leyva Iron Works purchased products from ACT, that its former employees Sharma, Jha, and Yadav . . . are 'associated with' Leyva Iron Works and are selling ACT products 'through' Leyva Iron Works, [and] that Leyva Iron Works is a 'sham corporation formed for the use of' the [former employees]." But the fact that Leyva Iron Works, with Elvis Leyva as its director, was engaged in the business of buying and reselling products from ACT in connection with the other defendants supports the conclusion that the Leyva parties engaged in the business of selling goods. *Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at \*6; *see Gaskamp*, 596 S.W.3d at 480 ("Notably, the exemption's plain text requires the defendant to be primarily engaged in *the business* of selling goods or services, not primarily engaged in the act of *selling*.").

Thus, the first prong of the *Castleman* test is established. *See Castleman*, 546 S.W.3d at 688 (identifying as element of commercial-speech exemption that defendant was primarily involved in business of selling or leasing goods or services).

### 2. *The Leyva parties made the challenged statements or engaged in the challenged conduct in their capacity as a seller of those goods*

ACT alleged that the Leyva parties engaged in double dealing by engaging in fraudulent sales and transactions with ACT. The ultimate goal of these commercial transactions was financial gain for the Leyva parties and the other defendants. The Leyva parties argue that "there is no allegation that either Leyva Iron Works or Elvis Leyva made any communications in their capacities as sellers of goods to any actual or potential customers" and that "all of ACT's claims against Leyva are factually predicated on his alleged association with and communications with" the former employees.

We consider not just statements made by the Leyva parties, but all the challenged conduct, and we consider the context in which the alleged conduct was performed to determine whether the Leyva parties engaged in the conduct in their capacity as sellers of goods or services. *Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at *7; *Gaskamp*, 596 S.W.3d at 480–81. As we observed in *Blaze Sales*, ACT's pleadings asserted that the former employees and the other defendants—which includes the Leyva parties—acted as alter egos of one another to engage in the challenged conduct and related communications for the ultimate purpose of making their own sales of oilfield tools. *See* 2020 WL 1917842, at *7. Considered in this context, the Leyva parties' alleged conduct supports a conclusion that they engaged in the complained-of conduct in their capacity as sellers of goods and

11

services. *See id.*; *see also Castleman*, 546 S.W.3d at 688 (commercial-speech exemption applies when defendant made statement or engaged in conduct on which claim is based in his capacity as seller or lessor of those goods or services); *Gaskamp*, 596 S.W.3d at 480 (factual allegations contained in pleadings may alone be sufficient to demonstrate nature of claims).

Thus, the conduct and any related communications identified by ACT in its petition implicated the Leyva parties' speech and conduct as part of their attempt to secure sales for their own benefit in their capacity as the ultimate seller of goods. *See Castleman*, 546 S.W.3d at 688; *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 154 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (challenged statement or conduct must be made for purpose of securing sales in goods or services of person making statement).

### 3. *The Leyva parties' statement or conduct arose out of a commercial transaction involving the kind of goods they provide.*

ACT alleged numerous commercial transactions by all of the defendants that gave rise to the challenged conduct or speech and asserted that the Leyva parties acted as alter egos of the other defendants in completing the allegedly tortious transactions. Specifically, ACT identified a transaction in which the Leyva parties purchased ACT products at a discount and then misrepresented that they had returned the products when in fact they had not. ACT further alleged that Leyva engaged in this conduct in order to obtain products that were then resold for the

12

benefit of both the Leyva parties and their co-conspirators, including the former employees and their associated businesses. ACT's pleadings thus implicate the Leyva parties' conduct as it arose out of commercial transactions involving the kind of goods sold by Leyva Iron Works. *See Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at *7–8.

Thus, ACT alleged a transaction involving the kind of goods or services that the Leyva parties bought and resold, either for their own benefit or on behalf of their alter-ego businesses and business partners. We conclude that the third *Castleman* factor is satisfied. *See* 546 S.W.3d at 688.

### 4. *The intended audience of the Leyva parties' statements or conduct was actual or potential customers of their goods.*

Finally, ACT's pleadings alleged that the Leyva parties' acts that gave rise to ACT's causes of action against them were directed to an audience of actual or potential customers of the oilfield tools that Leyva obtained from ACT by fraud or theft. ACT alleged that the Leyva parties' double dealing and acting in concert with the other defendants was directed toward Leyva's own customers, either current or potential, in an effort to secure sales for Leyva's own financial interests.

This implicates communications or conduct by the Leyva parties directed toward their own actual or potential customers. *See Blaze Sales & Servs., Inc.*, 2020 WL 1917842, at *8; *Castleman*, 546 S.W.3d at 688; *Gaskamp*, 596 S.W.3d at 481 (holding that defendants' sending brochures to their former employer's clients

13

as part of their effort to market their new employer's services to potential new customers satisfied fourth element); *Staff Care Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at \*8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (holding that commercial-speech exemption applies when business for which one works stands to profit from statements or conduct at issue). We conclude that the fourth *Castleman* element is satisfied, and, thus, the commercial-speech exemption applies to ACT's claims. *See* 546 S.W.3d at 688.

Because we conclude that the commercial-speech exemption applies to ACT's challenged claims, the trial court had no choice but to deny the Leyva parties' motion. *See Norvil*, 580 S.W.3d at 284. We need not address the remaining portions of the parties' arguments on appeal regarding whether ACT's allegations implicate the free speech or free association rights as defined by the TCPA or whether ACT established a prima facie case for each of the challenged claims. *See id.* (plaintiff can avoid burden-shifting requirements by showing that exemption applies) (citing TEX. CIV. PRAC. & REM CODE § 27.010).

We overrule the Leyva parties' sole issue.

**Conclusion**

We affirm the order of the trial court.


Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Hightower.