**Opinion issued September 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-19-00682-CV

————————————

**ALLIANT INSURANCE SERVICES, INC. AND DAN COTUNO, Appellants**

**V.**

**USI SOUTHWEST, INC., Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-30845**

---

### MEMORANDUM OPINION

Appellee USI Southwest, Inc. sued its former employee, Dan Cotuno, claiming that Cotuno breached an employment agreement containing non-solicitation and non-interference provisions. USI also sued Cotuno's current employer, Alliant Insurance Services, Inc., for tortious interference with contract.

Cotuno and Alliant moved to dismiss the suit under the Texas Citizens Participation Act ("TCPA"). The trial court denied the motion.

Cotuno and Alliant filed this interlocutory appeal, challenging the trial court's order. Among its arguments, Cotuno and Alliant assert that USI did not show that its claims are exempt from the TCPA under the commercial-speech exemption. Because we conclude that USI established that the commercial-speech exemption applies to its claims, we affirm the trial court's order denying Appellants' motion to dismiss.

## Background

USI is an insurance brokerage and risk-management firm engaged in the business of providing insurance and risk-management consulting services to its customers. USI hired Cotuno as an insurance broker in 2011. Cotuno later signed an employment agreement with USI, which contained non-solicitation and non-interference provisions. Under these provisions, Cotuno agreed that for two years following the termination of his employment with USI, he could not—directly or indirectly—solicit, service, or accept business from any USI client that he had serviced or about which he had gained confidential information during the last two years of his employment with USI. The prohibited conduct included accepting a "broker-of-record letter" from a USI client to provide services to that client in competition with USI.

2

In January 2018, USI terminated Cotuno's employment. At that time, one of USI's clients was U.S. Capital Advisors. USI handled U.S. Capital's employee benefits line of insurance. Cotuno's father-in-law was on U.S. Capital's board of directors, and while he was employed by USI, Cotuno had serviced U.S. Capital's account for USI.

Alliant is an insurance brokerage firm and a competitor of USI. In March 2019, Alliant hired Cotuno to work as an insurance broker, performing essentially the same type of work that he had performed for USI. On April 19, 2019, USI received a broker-of-record letter from U.S. Capital. The letter notified USI that U.S. Capital was changing its insurance broker from USI to Alliant, ending its relationship with USI.

Two weeks later, USI filed suit against Cotuno and Alliant. USI asserted a breach of contract claim against Cotuno and a tortious interference with contract claim against Alliant. USI alleged that Cotuno had breached his employment agreement with USI "by, among other things, directly or indirectly soliciting, accepting business from, and/or servicing at least one USI customer who Cotuno managed or regularly serviced and about whom he acquired confidential information in the last two years of his employment with USI." USI alleged that Alliant "was aware of Cotuno's obligations to USI," arising from the non-solicitation provisions of his employment agreement, but nonetheless "intentionally and willfully chose to

3

disregard Cotuno's contractual obligations to USI" in order to "profit from that breach."

Appellants answered the suit, denying USI's claims. Appellants also filed a motion to dismiss USI's claims under the TCPA, claiming that USI's suit was based on, related to, and in response to the exercise of their rights of free speech and association. Appellants pointed out that the TCPA's right of free speech pertained to communications about matters of public concern, such as issues related to goods, products, or services in the marketplace. Appellants also asserted that USI's claims implicated their right of association because the claims involved communications between individuals who had joined together to collectively pursue common interests.

Appellants offered Cotuno's unsworn declaration to support the motion to dismiss. In the declaration, Cotuno averred that USI was using the suit "to intimidate, harass and bully me . . . [to] prohibit me from speaking or associating with my own father-in-law (who recently moved [U.S. Capital's] small insurance program to Alliant completely on its own, through other Alliant employees and brokers, and without my direct involvement)." Cotuno stated that he had not solicited any of his former USI clients, including U.S. Capital. Instead, he claimed that U.S. Capital "came to Alliant all on its own simply because [U.S. Capital] no longer wanted to work with USI."

The parties entered into a Rule 11 agreement, permitting USI to conduct limited discovery relevant to Appellants' motion to dismiss. USI deposed Cotuno and another Alliant insurance broker, A. Wood. Appellants asserted that it was Wood, not Cotuno, who obtained U.S. Capital's employee benefits account for Alliant. USI also obtained documentary evidence from Alliant, including email correspondence between Alliant and U.S. Capital regarding the transfer of U.S. Capital's employee benefits business to Alliant.

USI filed a response in which it asserted three reasons to deny Appellants' motion to dismiss. First, USI argued that the TCPA did not apply to its claims against Appellants because the claims were not related to Appellants' rights of free speech and association. Second, USI claimed that it had established a prima facie case for its causes of action. And third, USI asserted that its claims are exempt from the TCPA under the statute's commercial-speech exemption.

In its response, USI asserted that the evidence showed that Cotuno had breached the non-solicitation and non-interference provisions of his employment agreement. USI pointed to evidence showing that, before hiring Cotuno, Alliant handled only U.S. Capital's professional fund and management lines of insurance and did not handle U.S. Capital's employee benefits line. Wood testified that before U.S. Capital finally transferred its employee benefits business to Alliant in April 2019, he had been trying unsuccessfully for several years to obtain U.S. Capital's

5

employee benefits account. An email from U.S. Capital to Wood in January 2019 indicated that U.S. Capital was "happy with the services USI provide[d]" to it. The evidence showed that, in March 2019, Wood informed U.S. Capital that Cotuno had been hired by Alliant. It was only after Cotuno started working for Alliant that U.S. Capital finally agreed to transfer its employee benefits business to Alliant. And it was only then that U.S. Capital signed a broker-of-record letter establishing Alliant as its insurance broker for its employee benefits line. Wood testified that U.S. Capital's representative told him that because Cotuno was now working for Alliant, it "would help in their decision to move their business to [Alliant]." Wood said that moving the account to Alliant was already "under consideration," but U.S. Capital had made no commitment to moving its employee benefits business to Alliant before Cotuno was hired.

The evidence showed that Cotuno, but not Wood, participated in a meeting between Alliant and U.S. Capital regarding the transfer of the account to Alliant. Cotuno sent U.S. Capital an email after the meeting, entitled "Introduction Meeting," summarizing the "action items" that had been discussed. One of the action items was for Cotuno and another Alliant employee to "restructure the BOR [broker of record letter] for immediate 'exclusivity' to give [Alliant] access to plan information, renewals and data." Cotuno closed the email stating that he and Alliant "look[ed] forward to the partnership" with U.S. Capital.

A few days later, Alliant sent the broker of record letters to U.S. Capital for execution. These were the letters that U.S. Capital would send to its insurance carriers and to USI notifying them that U.S. Capital was moving its employee benefits account from USI to Alliant. In a follow-up email, Cotuno inquired how the executed broker of record letters were progressing. A later email reflected that U.S. Capital sent the executed broker of record letters to Cotuno.

In its response, USI also asserted that "Alliant knew about the restrictions in Cotuno's employment agreement with USI." Cotuno testified that during the hiring process with Alliant, he provided Alliant with a copy of the employment agreement he had signed with USI. Alliant's in-house counsel told Cotuno that he would be indemnified by Alliant if he was sued by USI for violating the non-competition provisions of the agreement. The evidence also showed that Wood stated in an email to U.S. Capital that Cotuno should be left off email "to avoid non-compete issues."

Appellants filed a reply to USI's response. They pointed to testimony by Wood indicating that U.S. Capital had decided to move its employee benefits business to Alliant because USI had failed to make a regulatory filing with the IRS for U.S. Capital's employee benefits plan, resulting in U.S. Capital being fined. Appellants reiterated their assertion that USI's claims should be dismissed pursuant to the TCPA.

Without stating its reasons, the trial court signed an order denying Appellants' motion to dismiss. Appellants now challenge the order in this interlocutory appeal. Among their arguments on appeal, Appellants assert that USI did not demonstrate that USI's claims are exempt from the TCPA under the commercial-speech exemption.

## A. Standard of Review

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 83 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). To the extent resolution of this appeal turns on construction of the TCPA, we review that de novo as well. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). When construing the TCPA, as with any other statute, our objective is to give effect to the legislative intent, looking first to the statute's plain language. *Id.* If that language is unambiguous, "we interpret the statute according to its plain meaning." *Id.* Additionally, we construe the TCPA "liberally to effectuate its purpose and intent fully."[1] FORMER TEX. CIV. PRAC. & REM. CODE § 27.011(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

---

[1] The Texas Legislature amended certain provisions of the TCPA in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12, secs. 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010, Tex. Sess. Law Serv. 684, 687. The amendments became effective September 1, 2019. *Id.* at §§ 11–12. Because this suit was filed before the effective date of the amendments, this case is governed by the statute as it existed before the amendments. *See id.* All our citations are to the TCPA as it existed before September 1, 2019.

The TCPA provides that when ruling on a motion to dismiss, the trial court considers the pleadings and any supporting and opposing affidavits to evaluate whether each party has met its burden. FORMER TEX. CIV. PRAC. & REM. CODE § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015). The trial court also "may allow specified and limited discovery relevant to the motion" to dismiss. TEX. CIV. PRAC. & REM. CODE § 27.006(b); *see In re SSCP Mgmt., Inc.*, 573 S.W.3d 464, 472–73 (Tex. App.—Fort Worth 2019, no pet.) (acknowledging that "some merits-based discovery" may be necessary for nonmovant to respond to TCPA dismissal motion). Thus, in addition to the pleadings and affidavits, "a trial court may, but is not required to, hear live testimony and receive the submission of documentary evidence" in determining whether to grant or deny a motion to dismiss. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied). In our review of the trial court's ruling on a TCPA motion, we consider the pleadings and the evidence in a light favorable to the nonmovant. *Porter-Garcia*, 564 S.W.3d at 84; *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

**B.    The Commercial-Speech Exemption Applies**

Appellants moved for dismissal of USI's breach of contract and tortious interference claims under the TCPA, asserting that USI's suit was a retaliatory legal action based on or relating to Appellants' right of free speech and right to associate "with the people and businesses of their choosing." Among its responsive arguments, USI asserted that the TCPA did not apply to its claims because the claims fell under the statute's commercial-speech exemption.

The TCPA provides a mechanism for dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of" the rights of free speech, petition, or association. FORMER TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b). However, the TCPA expressly exempts qualifying commercial speech from the statute's application:

> [The TCPA] does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

FORMER TEX. CIV. PRAC. & REM. CODE § 27.010(b). If the commercial-speech exemption applies, the trial court "has no choice but to deny the motion." *See N. Cypress Med. Ctr. Operating Co. GP v. Norvil*, 580 S.W.3d 280, 284 (Tex. App.— Houston [1st Dist.] 2019, pet. denied).

As the party asserting the commercial-speech exemption, USI had the burden to prove its application. *See Schmidt v. Crawford*, 584 S.W.3d 640, 653 (Tex.

10

App.—Houston [1st Dist.] 2019, no pet.); *Schimmel v. McGregor*, 438 S.W.3d 847, 857 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). In determining whether USI met this burden, we consider the pleadings and record evidence. *See* FORMER TEX. CIV. PRAC. & REM. CODE § 27.006(a); *see Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

The Supreme Court of Texas has identified four elements that must be met for the commercial-speech exemption to apply:

(1)  the defendant was primarily engaged in the business of selling or leasing goods or services;

(2)  the defendant made the statement or engaged in the conduct on which the claim is based in its capacity as a seller or lessor of those goods and services;

(3)  the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services that the defendant provides; and

(4)  the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018).

We address each *Castleman* element in turn.

### 1. Appellants were primarily engaged in the business of selling services

Regarding the first element, the evidence showed that Appellants were primarily engaged in the business of selling services. *See id.* In support of its

11

response, USI offered the affidavit of Region Chief Executive Officer John Collado. He testified that Alliant, like USI, is in "the business of selling insurance brokerage services." In his deposition, Cotuno testified that he worked at Alliant as an insurance broker or "producer." In that position, he testified that he worked with clients selling them insurance products and services.

We conclude that the first *Castleman* element is satisfied. *See id.*

### 2. Appellants made statements or engaged in conduct on which USI's claims are based in their capacity as a seller of services

For the second *Castleman* element, USI was required to show that its claims were based on either a statement that Appellants made in their capacity as a seller of insurance services or on conduct in which they engaged as a seller of those services. *See id.* To make this determination, we review the context in which the conduct was performed. *Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *4 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.) (considering context in which statements were made to determine if defendant made them in capacity as seller).

In its petition, USI alleged that Cotuno breached the non-solicitation and non-interference provisions of his employment agreement through his employment with Alliant, a competing seller of insurance services, "[by] directly or indirectly soliciting, accepting business from, and/or servicing at least one USI customer who Cotuno managed or regularly serviced and about whom he acquired confidential

12

information in the last two years of his employment with USI." *See Hieber*, 591 S.W.3d at 213 (concluding that, by pleading breach of non-solicitation provision, plaintiff established that its claims were based, in part, on statements made in defendant's capacity as seller). Related to this allegation, USI offered evidence showing that Cotuno participated in a meeting with U.S. Capital regarding transferring U.S. Capital's employee benefits business from USI to Alliant. Cotuno also corresponded by email with U.S. Capital about the transfer. The evidence showed that Cotuno participated in "restructuring" the broker of record letters that served to establish that Alliant was U.S. Capital's new insurance broker and to provide notice of the change to USI and the insurance carriers. The evidence also showed that U.S. Capital sent the executed broker of record letters to Cotuno, who then forwarded them for processing. The same evidence supported an inference that Alliant acted to permit and facilitate Cotuno's participation in the dealings with U.S. Capital in order to secure a firm commitment from U.S. Capital and to complete the transaction.

Appellants contend, without discussion of USI's actual pleadings, that USI cannot meet the second element because USI's breach of contract claim was based, in part, on Cotuno's conversation with his father-in-law, who sits on U.S. Capital's board of directors, about Cotuno's new job with Alliant. Appellants assert that Cotuno did not make those statement in his capacity as a seller of services but as a

family member. However, USI's petition makes no reference to Cotuno's conversation with his father-in-law as a basis for its breach of contract claim. Because USI's pleadings are the best evidence of the nature of its claims, Appellants' assertion is unavailing. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

Based on the pleadings and the evidence, Appellants engaged in the complained-of conduct and made the complained-of statements in the context of pursuing and procuring a sale of their insurance services to U.S. Capital. Thus, Appellants engaged in the complained-of conduct and made the complained-of statements in their capacity as sellers of insurance services. *See Rose*, 2019 WL 2588512, at *6 (concluding that second element satisfied because appellant alleged to have contacted former employer's customers in attempt to solicit sales for his own financial gain); *Staff Care, Inc. v. Eskridge Enters*., No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (noting that in *Castleman*, supreme court "implied the exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue").

We conclude that the second *Castleman* element is satisfied. *See* 546 S.W.3d at 688.

### 3. Appellants' statements or conduct at issue arose out of a commercial transaction involving the kind of services that Appellants provide

The closely related third *Castleman* element requires that the complained-of statement or conduct arise out of a commercial transaction involving the kind of goods or services the defendant provides. *See Castleman*, 546 S.W.3d at 688, 690; *see also Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652, at *4 (Tex. App.—Austin May 4, 2018, pet. denied) (mem. op.) (noting requirement that statement or conduct at issue "arose out of" commercial transaction means that it "results, issues, or proceeds" from sale or commercial transaction). Because the conduct targeted USI's client, U.S. Capital, with the apparent objective of securing it as a client for Alliant, the complained-of conduct and statements of soliciting U.S. Capital and then transferring U.S. Capital's employee benefits insurance line to Alliant also "arose out of a commercial transaction involving the kind of goods or services" that Appellants provide. *See Callison v. C & C Personnel, LLC*, No. 09-19-00014-CV, 2019 WL 3022548, at *6 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) ("Utilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies [third] element.").

Appellants assert that the third element is not satisfied because the complained-of statements or conduct did not arise out of a commercial transaction because U.S. Capital's account was already being transferred to Alliant when Cotuno began working for Alliant. However, Wood testified that, although moving

U.S. Capital's account to Alliant was already "under consideration," U.S. Capital had made no commitment to moving the account to Alliant until after Cotuno was hired. And the evidence indicates that Cotuno facilitated the completion of the transaction between Alliant and U.S. Capital.

We conclude that the third *Castleman* element is satisfied. *See* 546 S.W.3d at 688.

### 4. Intended audience of the statements or conduct were actual or potential customers of Appellants for the kind of services that Appellants provides

The last *Castleman* element requires that "the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides." *Castleman*, 546 S.W.3d at 688. The pleadings and evidence demonstrate that Appellants pursued one of USI's customers, U.S. Capital, in order to sell Alliant's insurance services to it. Appellants contend that this element is not satisfied because U.S. Capital was not a "potential customer" of Appellants. It points out that U.S. Capital already had its professional fund and management lines of insurance with Alliant. However, the line of insurance relevant here was U.S. Capital's employee benefits line, which was being serviced by USI not by Alliant. And, the customer need not be a "potential customer" but can also be an "actual customer." *See id.* We conclude that the fourth *Castleman* element is satisfied and, therefore, the commercial-speech exemption applies to USI's claims. *See id.*

Viewing the evidence in a light favorable to USI, we hold that USI established that the TCPA does not apply to its legal action because it is exempt under the commercial-speech exemption.[2] The trial court did not err in denying Appellants' motion to dismiss. *See Norvil*, 580 S.W.3d at 284 ("If an exemption applies, the trial court has no choice but to deny the motion."). Because our holding fully supports the trial court's order denying Appellants' motion to dismiss, we need not consider Appellants' remaining arguments challenging the trial court's order. *See id.*; *Hieber*, 591 S.W.3d at 213; *see also* TEX. R. APP. P. 47.1 (providing that "court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

**Conclusion**

We affirm the order of the trial court denying Appellants' motion to dismiss filed pursuant to the TCPA.

---

[2] We express no opinion about the merits of USI's claims against Cotuno and Alliant but evaluate USI's allegations and the limited TCPA evidence only for the purpose of determining that the *Castleman* factors are met.

17

Richard Hightower
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.