**Opinion filed May 18, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00295-CV

_____

## APACHE CORPORATION AND APA CORPORATION, Appellants

## V.

## APOLLO EXPLORATION, LLC; COGENT EXPLORATION, LTD., CO.; AND SELLMOCO, LLC, Appellees

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV57872**

### M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the denial of a motion to dismiss brought under the Texas Citizens Participation Act (TCPA).  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2020).  In this case, we consider whether a fraudulent transfer claim is "based on, or in response to" Appellants' exercise of free

speech, when the facts supporting the claim were disclosed in a press release that was issued by Appellants. *See id.* §§ 27.003(a), .005(b). We hold that the claim is based on and in response to the conduct of Appellants in transferring assets, rather than any exercise of free speech in the press release. On that basis, we affirm the trial court's denial of Appellants' motion to dismiss under the TCPA.

*Background Facts*

This appeal is the latest development in litigation that spans nearly a decade. In 2014, Apollo Exploration, LLC; Cogent Exploration, Ltd., Co.; and SellmoCo, LLC (collectively, Appellees) sued Apache Corporation for breach of a purchase and sale agreement that involved 109 oil and gas leases. As trial approached, the trial court struck all of Appellees' expert witnesses on damages and rendered a take-nothing judgment in favor of Apache. The trial court also awarded $4,800,000 in attorneys' fees to Apache. An appeal to this court followed. *See Apollo Expl., LLC v. Apache Corp.*, 631 S.W.3d 502, 514 (Tex. App.—Eastland 2021), *rev'd in part*, No. 21-0587, 2023 WL 3134243 (Tex. Apr. 28, 2023). We will refer to our prior opinion and the appeal from which it arose as "*Apollo I.*" As reflected in our case citation to *Apollo I*, the Texas Supreme Court recently reversed in part our opinion in *Apollo I* and remanded the case back to us for further proceedings. 2023 WL 3134243, at *18.

The press release at the center of the TCPA claim was issued on January 4, 2021, while the appeal of *Apollo I* was pending in this court. In the press release, Apache announced a reorganization. The reorganization included a transfer of Apache's assets in Suriname and the Dominican Republic to Appellant APA Corporation. The press release also included a statement from John J. Christmann IV, Apache's chief executive officer and president. Christmann indicated that the reorganization would "modernize our operating and legal structure" and that the use

2

of a holding company "offers advantages in risk management." Apache later issued a second press release on March 1, 2021, announcing that the reorganization had been completed.

We issued our opinion in *Apollo I* in June 2021, reversing in part and remanding to the trial court for the determination of several causes of action. 631 S.W.3d at 545. Soon thereafter, on August 17, 2021, Appellees filed the lawsuit against Apache and APA that is the subject of this appeal. The lawsuit, which repeatedly references the January 4 press release in its statement of facts, asserts a cause of action under the Texas Uniform Fraudulent Transfer Act (TUFTA), alleging that the reorganization made it impossible, or at least more difficult, to reach the Suriname and Dominican Republic assets in order to satisfy a judgment against Apache. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001–.013 (West 2023).

Apache and APA answered and filed a motion to dismiss. Although most of the motion to dismiss was focused on a request for dismissal under Rule 91a of the Texas Rules of Civil Procedure, the motion also, in a single paragraph, generally sought relief under the TCPA, indicating that "in attempting to impose liability on Apache for its communications with its shareholders, Plaintiffs are infringing upon Apache's right to speak freely with its shareholders and the investing public." *See* TEX. R. CIV. P. 91a.

The trial court heard the motion to dismiss on December 3, 2021. The parties directed the bulk of their attention at the hearing on Appellants' request for relief under Rule 91a. The trial court denied the motion to dismiss, and this appeal from the TCPA denial followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12) (West Supp. 2022).

*Analysis*

In their sole issue, Appellants assert that the trial court erred in denying their motion to dismiss under the TCPA. One purpose of the TCPA is to protect citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The Legislature enacted the TCPA "to safeguard 'the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law'" while, at the same time, protecting a person's right "to file meritorious lawsuits for demonstrable injury." *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835, 847 (Tex. 2021) (quoting CIV. PRAC. & REM. § 27.002).

To effectuate this dual purpose, the TCPA employs a three-step process to determine whether a lawsuit or claim is subject to dismissal. *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant must demonstrate by a preponderance of the evidence that a legal action is based on, or in response to, the movant's exercise of one of three protected rights: the right of free speech, the right to petition, or the right of association. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *see also Montelongo*, 622 S.W.3d at 296. If the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence" a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Montelongo*, 622 S.W.3d at 296. Finally, even if the nonmovant meets that burden, the trial court is required to dismiss the legal action if the movant establishes "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." CIV. PRAC. & REM. § 27.005(d).

4

We review de novo the denial of a TCPA motion to dismiss. *Rossa v. Mahaffey*, 594 S.W.3d 618, 624 (Tex. App.—Eastland 2019, no pet.). Whether the TCPA applies to a particular claim is a question of statutory construction and is also reviewed de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

*Did Appellants Preserve the Issue?*

Appellees contend that Appellants failed to preserve their TCPA issue for appeal because they never mentioned "the issue of whether the fraudulent transfer action was based on or in response to an exercise of the right to free speech" in the trial court.[1] A party may not claim that the TCPA applies to a protected right on appeal if they did not also rely upon the same protected right in the trial court. *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 238 (Tex. App.—Eastland 2019, no pet.); *Rossa*, 594 S.W.3d at 626.

In this case, Appellants devoted only a single paragraph of their motion to dismiss to the TCPA. However, that paragraph alleges, among other things, that Appellees "are infringing upon Apache's right to speak freely with its shareholders and the investing public." While this allegation does not track the statutory language word-for-word, it is sufficient to raise the issue of whether Appellants' protected right to free speech has been affected by the fraudulent transfer claim. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018) ("Rules of error preservation should not be applied so strictly as to unduly restrain appellate courts from reaching the merits of a case."). We will therefore address the TCPA issue on the merits.

---

[1]Appellees further assert that Appellants failed to preserve error on the issue of whether the subject of the press release was "a matter of public concern," an element that supports the existence of the protected right of free speech. *See* CIV. PRAC. & REM. §§ 27.003(a), 27.001(3) and (7). Because we do not reach the question of whether the press release constitutes free speech under the TCPA, we do not address this argument.

*Did Appellants Establish a Nexus?*

As their initial burden under the TCPA, Appellants are required to establish a nexus between the rights protected by the statute and Appellees' claims. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied); *see also Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 428–29 (Tex. App.—Dallas 2019, pet. denied). To do so, they must show that their claim is "factually predicated on the alleged conduct that falls within the scope of [the] TCPA's definition of 'exercise of the right of free speech,' petition or association." *See Grant*, 556 S.W.3d at 879; *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd) (concluding that any activities by the movant "that are not a factual predicate for [the nonmovant's] claims are simply not pertinent to the inquiry" of whether the TCPA applies to the claims); *see also Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 296 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 85 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Cavin v. Abbott*, 545 S.W.3d 47, 65 (Tex. App.—Austin 2017, no pet.).

After the TCPA was enacted, the Texas judicial system experienced a groundswell of claims making use of the TCPA in novel ways. *See ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 626 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). The TCPA was then amended in 2019 in an effort to tighten its language "so that it could no longer be used improperly as a litigation tactic to thwart its purpose." Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 TEX. TECH L. REV. 163, 165 (2020); *see* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684.

One of the more significant changes was a narrowing of the categories of connections that must be demonstrated in order to meet the nexus requirement. *See*

*ML Dev*, 649 S.W.3d at 626. Prior to the amendment, a movant was required to establish that a claim against it was "based on, relate[d] to, or . . . in response to" the movant's exercise of a protected right. CIV. PRAC. & REM. § 27.005(b) (old version); *ML Dev*, 649 S.W.3d at 626. The amendment removed language which allowed a movant to show that the action in question "relates to" the movant's exercise of a protected right, which was the most expansive of the three categories of connections. CIV. PRAC. & REM. § 27.005(b) (current version); *ML Dev*, 649 S.W.3d at 626; *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 604 (Tex. App.—San Antonio 2018, pet. denied) (characterizing "relates to" as a "broader qualifying phrase"). The statute now requires a movant to demonstrate that the action is either "based on" or is "in response to" an exercise of a protected right. CIV. PRAC. & REM. §§ 27.003(a), .005(b). Thus, the amendment now requires TCPA movants "to establish a closer nexus between the claims against them and the communications they point to as their exercise of protected rights." *ML Dev*, 649 S.W.3d at 629.

In determining whether Appellants have satisfied the burden of proving that their claims fall within the scope of the TCPA, we consider the pleadings and affidavits that state the facts on which liability is based to determine the true nature of the dispute. *See* CIV. PRAC. & REM. § 27.006(a); *David H. Arrington Oil & Gas Operating, LLC v. Wilshusen*, 630 S.W.3d 184, 190 (Tex. App.—Eastland 2020, pet. denied); *see also Clayton Mountain, LLC v. Ruff*, No. 11-20-00034-CV, 2021 WL 3414754, at *5 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.). The plaintiff's pleading is the "best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. [Comm'n Op.] 1936)); *Wilshusen*, 630 S.W.3d at 190. Therefore, we determine the TCPA's applicability based on a holistic review of the pleadings. *Adams*, 547 S.W.3d at 897.

Appellants assert that the fraudulent transfer lawsuit is "based on or in response to" its exercise of free speech because it is "factually predicated" on the press release. In response, Appellees contend that their claim for fraudulent concealment is based on or in response to Appellants' conduct in transferring assets, rather than the press release. The press release, they contend, is merely evidence of such conduct. We conclude that Appellees' claims are neither "based on" or "in response to" the press release/communication.[2]

*"Based On…"*

Other courts of appeals have frequently made a distinction between claims that are "based on" a communication and claims that are "based on" conduct. "[W]hen a claim does not allege a communication, and is instead based on a defendant's conduct, the TCPA is not implicated." *Pacheco v. Rodriguez*, 600 S.W.3d 401, 410 (Tex. App.—El Paso 2020, no pet.). This distinction is best illustrated by two recent cases.

In *Smith v. Crestview NuV, LLC*, a pre-amendment case, an investor sued a medical technology company that had allegedly misapplied its investment funds. 565 S.W.3d 793, 794–95 (Tex. App.—Fort Worth 2018, pet. denied). Later, the investor also sued a doctor associated with the company for "aider" liability under the Texas Securities Act. *Id.* at 795–96; *see former* TEX. REV. CIV. STAT. ANN. art. 581-33.F(2). The doctor asserted that the aider-liability claims arose out of alleged communications, between himself and the owner of the company, that were protected under the TCPA. *Id.* at 798. The court concluded that, although the doctor admitted he had a number of communications with the owner of the company, the

---

[2]Appellees also argue that the contents in the press release do not constitute the "[e]xercise of the right of free speech" under the Act. *See* CIV. PRAC. & REM. § 27.001(3), (7). Because we have concluded that the lawsuit is not based on or in response to the press release, we do not reach this issue.

causes of action against him were not based on those communications but were instead based on his "actions and inactions." *Id.* at 798. Accordingly, the TCPA did not apply to such claims. *Id.* at 797–98.

In *ML Dev*, a post-amendment case, a retail chain sought rights to an easement following the purchase of a tract of land where it planned to build a distribution center. 649 S.W.3d at 625. The sellers alleged that the claims at issue were based on their statements denying access to easements, and that such statements were protected free speech under the TCPA. *Id.* at 628. The First Court of Appeals affirmed the trial court's denial of the TCPA motion, holding that the buyer's claims were not based on or in response to the communications denying the easement, but in response to the denial of easement access. *Id.* at 629. As such, the movants did not meet the "higher burden" imposed under the amended TCPA. *Id*. at 628.

In this case, Appellees' pleadings reference the press release somewhat extensively in their statement of facts. However, the claim could also be stated without any reference to the press release whatsoever, and the press release is not essential to those claims. Instead, Appellees' claims are based on Appellants' *conduct* in transferring certain assets from Apache to APA.

Appellees also correctly argue that there is a difference between communication that is part of the claim itself and communication which merely serves as evidence in support of a claim. *See Polo*, 632 S.W.3d at 45 ("the communications at most are 'evidence' that the parties will likely present at trial to be used by the trier of fact in determining whether CPL had a retaliatory motive for terminating him, but the lawsuit is not itself factually predicated on them"); *In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex. App.— Fort Worth Oct. 25, 2018, no pet.) (mem. op.) (recognizing a distinction between communications used as evidence to support a claim for breach of contract and a

9

claim that is based on or in response to the communication); *see also Allied Orion Grp., LLC v. Pitre*, No. 14-19-00681-CV, 2021 WL 2154065, at \*4 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (adopting and applying the reasoning in *Polo*). The references to the press release in Appellees' pleadings merely point to evidence in support of their fraudulent transfer claim. The press release itself is not a part of the claim.

> *"…Or In Response To"*

We likewise conclude that Appellees' claims are not "in response to" the press release. Appellants argue that the "in response to" language in the TCPA should be interpreted expansively, relying in part on *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263 (Tex. App.—Tyler 2021, pet. denied). In *Baylor*, the Tyler Court of Appeals held that a plaintiff's claims are "'in response to' a protected activity when they react to or are asserted subsequently to the communication." 633 S.W.3d at 276 (citing *Grant*, 556 S.W.3d at 880). Appellants appear to argue from this language that any lawsuit that follows a related communication is "in response to" the communication for purposes of the TCPA, regardless of whether the relationship between the communication and the lawsuit is otherwise tenuous and unimportant. The facts of *Baylor* and *Grant* do not support such a broad interpretation.

In *Baylor*, a group of companies owned by two former National Football League Players brought suit against Baylor Scott & White. The former players alleged that, after Baylor purchased a controlling interest in a sports medicine facility that was owned by Texas Sport and Spine, the owners cancelled their contracts with the players without paying for their services. *Id.* at 273. As a result, the former players alleged that the owners gained the benefit of the former players' marketing and consulting services, including the publicity that came with those services,

10

without having to pay for them. *Id.* The causes of action asserted by the former players included fraud, promissory estoppel, and civil conspiracy. *Id.* at 273–74. The Tyler Court of Appeals found that the claims made by the former players were "based on or in response to" the alleged communications between the owners of the facility and held that the TCPA applied. *Id.* at 280.

*Grant* involved an asset purchase agreement between two technology companies. 556 S.W.3d at 871. During the course of the acquisition, the relationship between the parties deteriorated, and the buyer eventually sued the seller and its owners. *Id.* at 871. Among other things, the buyer alleged that the sellers conspired to defraud the buyer in connection with the purchase agreement and that the sellers solicited and accepted business from the buyer's customers and employees. *Id.* at 880–81. The Austin Court of Appeals held that such conduct satisfied the pre-amendment requirement for a nexus between the communication and the lawsuit. *Id.* at 881.

In both *Baylor* and *Grant*, the pleadings made it clear that the parties' claims were in reaction or response to the communications themselves. The claims against Baylor were asserted "in response to" (or, to borrow the Austin and Tyler courts' terminology, "in reaction to") a conspiracy between the owners of the sports medicine facility. Likewise, the claims in *Grant* were asserted in response and/or reaction to allegedly fraudulent statements and the recruitment of customers and employees. The same thing cannot be said in this case. Appellees' claims are in response to (or reaction to) the alleged fraudulent transfer of assets, not to the press release which announced those transfers.

Interpreting the TCPA in the manner suggested by Appellants would lead to a near limitless application of the nexus requirement. Almost every lawsuit, at its core, involves some communication that is made by or between the parties, and as

11

the press release illustrates, the present case is no exception. *See Polo*, 632 S.W.3d at 45. We do not agree that the mere sequence of a communication, followed by a lawsuit that relates in some way to the communication, is sufficient to demonstrate that a claim is "in response to" the communication. We likewise do not read *Baylor* or *Grant* to suggest such an interpretation, and to the extent they do so, we disagree.

*Prima Facie Burden*

While we have concluded that the TCPA is inapplicable to this claim, we are also satisfied that Appellees met their burden of producing "clear and specific" evidence of their fraudulent transfer action. Civ. Prac. & Rem. § 27.005(c).

The TCPA's requirement of "clear and specific evidence" means that the nonmovant "'must provide enough detail to show the factual basis for its claim' and must provide enough evidence 'to support a rational inference that the allegation of fact is true.'" *Hall*, 579 S.W.3d at 377 (quoting *Lipsky*, 460 S.W.3d at 590–91); *see also* Civ. Prac. & Rem. § 27.005(c); *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214 (Tex. App.—Eastland 2019, pet. denied). In determining whether a legal action should be dismissed, the TCPA requires us to consider the evidence presented by the parties, as well as the pleadings themselves. *See* Civ. Prac. & Rem. § 27.006(a). In so doing, we are mindful that a TCPA motion to dismiss is not a trial on the merits and is not intended to replace either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure. *Stallion*, 592 S.W.3d at 215.

Under TUFTA, "[a] transfer . . . is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor." Bus. & Com. § 24.005(a)(1). This language gives rise to four elements: (1) whether Appellees are creditors, (2) whether Appellants are debtors, (3) whether

12

assets were transferred after, or a short time before, the claim arose, and (4) whether the transfers were made with the intent to hinder, delay, or defraud Appellees. *See Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204–05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). We conclude that Appellees have provided "clear and specific" evidence[3] for each of these elements. CIV. PRAC. & REM. § 27.005(c).

Elements (1) and (2) require Appellees to establish that they are in a debtor/creditor relationship with Appellants. Under TUFTA, a creditor is a "person . . . who has a claim," and a debtor is a "person who is liable on a claim." BUS. & COM. § 24.002(4), (6). A "claim" is a "right to payment . . . , whether or not the right is reduced to judgment." *Id.* § 24.002(3). Appellees pleaded that they are a creditor of Apache, and—in support of this claim—attached to their petition copies of their pleadings, as well as our opinion and judgment in *Apollo I*. Such evidence is sufficient to support a rational inference that Appellees had asserted a claim against Apache at the time of the transfer, even though such claim was not yet "reduced to judgment." *See* BUS. & COM. § 24.002(3). Element (3) is likewise satisfied inasmuch as the press release contains Appellants' own description of the transfers at issue.

Element (4) requires proof of Apache's intent to "hinder, delay, or defraud." BUS. & COM. § 24.005(a)(1). TUFTA provides a list of so-called "badges" of fraud, eleven "nonexclusive indicia of fraudulent intent," in Section 24.005(b). *Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 129 (Tex. 2019) (quoting *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016)). This list includes consideration of whether

---

[3]Appellants assert that Appellees rely solely on their petition, and that they have offered no other evidence in support of their TUFTA claims. This is incorrect. Appellees attached copies of the January 4 and March 1 press releases, as well as our opinion and judgment in *Apollo I*, to their pleadings and later relied on those documents in their response to the motion to dismiss.

"the transfer or obligation was to an insider" (subpart 1) and whether "before the transfer was made . . . , the debtor had been sued." (subpart 4).[4] BUS. & COM. § 24.005(b)(1), (4). "Evidence of a single 'badge of fraud' does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud." *Janvey*, 487 S.W.3d at 566–67.

The petition and attached exhibits provide support for the two badges described above, as well as additional evidence of intent. An "insider," for purposes of subpart 1, includes an "affiliate" of a corporation, which can include a person who "directly . . . owns" the debtor. BUS. & COM. § 24.002(7)(D), (1). At the hearing on the motion to dismiss, Appellants agreed that APA Corporation meets this definition. It is also evident from the petition and attached exhibits that Appellees' lawsuit preceded the transfer, in satisfaction of the element found in subpart 4 of the list of badges. As additional evidence of fraudulent intent, Appellees point to Christmann's statement in the January 4 press release that the use of a holding company offered "advantages in risk management."

Appellees' evidence does not conclusively resolve the issue. However, its satisfaction of two of the badges of intent, combined with the contents of the January 4 press release, provide an explanation of the factual basis for the element of intent, as well as evidence to support a rational inference in support of that element, in satisfaction of the TCPA's requirement for prima facie evidence. *Hall*, 579 S.W.3d at 377. In so holding, we do not comment on whether such evidence would be sufficient to overcome a motion for summary judgment or to support a jury finding on the issue of intent. *See Stallion*, 592 S.W.3d at 215.

---

[4]Appellees also allege that "transfer of substantially all [Apache Corp.'s] assets" under Section 24.005(b)(5). However, the factual allegations in Appellees' pleadings merely state that the transfers involved Apache's "most valuable assets," and Appellees offer no other evidence in support of this claim.

*This Court's Ruling*

We hold that Appellants have failed to establish the required nexus between the press release and the claims that have been asserted by Appellees, and that, in any event, Appellees have satisfied their burden under the TCPA of bringing forth a prima facie case. Accordingly, the order of the trial court is affirmed.

JOHN M. BAILEY
CHIEF JUSTICE

May 18, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[5]

Williams, J., not participating.

---

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.