**Opinion issued February 22, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00515-CV

———————————

**MARK SHEPARD, BROCK SHEPARD, CHRISTOPHER NEWHOUSE, WESTLEY HINTON, SKYDANCING CONSULTANTS ASSOCIATES, INC., AND STRUCTURAL CONSULTANTS ASSOCIATES, INC.,** Appellants

**V.**

**STEPHAN VOSS, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF STRUCTURAL CONSULTANTS ASSOCIATES, INC.,** Appellees

———————————

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-15679**

———————————

**MEMORANDUM OPINION**

Appellee Stephan Voss worked for and held a 20% ownership interest in appellant Structural Consultants Associates, Inc. ("SCA"). Appellant Mark Shepard owned 80% of SCA. Voss left the company to start a competing company with several other SCA employees. Voss expected to be paid outstanding wages and to be compensated for his 20% ownership interest in SCA. Neither happened. After receiving a favorable judgment for his wage claim from the Texas Workforce Commission ("TWC"), Voss sued the appellants alleging that they had transferred the intellectual property and reputation of SCA to a new entity, Skydancing Consultants Associates, Inc. ("Skydancing"), without any compensation to SCA, which rendered his 20% interest in SCA worthless.

The appellants moved to dismiss Voss's claims under the Texas Citizens Participation Act. The appellants generally alleged that Voss's lawsuit was based on or in response to: (1) their unsuccessful appeal of his TWC wage claim; (2) grievances filed by Mark against Voss's engineering licenses in three states; and (3) the actions that Voss alleged devalued his interest in SCA. In their TCPA motion, the appellants argued that Voss's claims were based on or in response to their exercise of the rights of free speech, petition, and association. The trial court denied the motion to dismiss but limited the factual basis for Voss's claim for

breach of fiduciary duty, excluding allegations about the appeal of the TWC wage claim and filing of grievances regarding Voss's engineering licenses.

The appellants filed this interlocutory appeal.[1] They raise seven issues. The first five issues challenge the trial court's denial of the motion to dismiss, alleging error at each step of the burden-shifting analysis for TCPA dismissal motions. In the sixth issue, they argue that the trial court erred by denying their request for attorney's fees. In the seventh issue, they argue that the trial court erred by sustaining Voss's objection to Mark Shepard's affidavit.

We affirm.

## Background

### I.    Business relationship

In 2002, Stephan Voss, a licensed professional engineer, began working for for Structural Consultants Associates (SCA). At that time, SCA was wholly-owned by Mark Shepard. In January 2015, Mark made Voss a partner and transferred to him 20% ownership in SCA. Voss alleged that Mark agreed to repurchase Voss's 20% interest within three years if Voss left SCA.[2] By 2021, issues arose between

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12).

[2]    This allegation is based on Voss's interpretation of the written agreement between the parties, which we do not reproduce here because it is not necessary to the disposition of the issues in this interlocutory appeal and because the factual issues, if any, relevant to interpretation of the agreement have not yet been determined by a factfinder.

Voss and Mark, and, by January 2022, Voss planned to form a new engineering firm, VSMSQ Structural Engineers, LLC ("VSMSQ").

Voss resigned from SCA in March 2022, and he sought unpaid wages and compensation for his interest in SCA. Voss did not receive unpaid wages or compensation. In April 2022, SCA and its new owners filed suit against Voss.[3] Mark filed grievances against Voss's professional engineering licenses in Texas, Colorado, and California, and each was later dismissed. Voss prosecuted a wage claim before the TWC, and he received a determination that he was owed $50,463.62.

## II.     Voss's lawsuit

In his original petition in this case, Voss alleged that Mark undertook a plan to transfer SCA's assets to a new entity to deprive Voss of his 20% interest and his ability to collect unpaid wages. Voss alleged that Mark formed Skydancing and named each of the individual appellants as director. Skydancing had the same initials as SCA. Voss alleged that Mark and the other directors of SCA diverted the business, assets, and opportunities of SCA to Skydancing, which began using SCA's website, logo, and reputation as its own and marketing its services as a rebranding of SCA, particularly on LinkedIn. Voss alleged that by January 2023,

---

[3]     *See VSMSQ Structural Engineers, LLC v. Structural Consultants Assocs., Inc.*, No. 01-22-00543-CV, 679 S.W.767, 778–79 (Tex. App.—Houston [1st Dist.] July 20, 2023, no pet.) (affirming trial court's denial of motion to dismiss SCA's common-law misappropriation claim).

SCA had no assets and had received no compensation from Skydancing for the use of its assets. On April 18, 2023, the TWC affirmed the decision of the Wage Claim Appeal Tribunal, holding that SCA owed Voss $50,463.62.

## A. Causes of action

Voss pleaded eight causes of action:

1. Breach of fiduciary duty against Mark and Brock Shepard, who were directors and officers of SCA;

2. Aiding and abetting breach of fiduciary duty against Skydancing, and Christopher Newhouse and Westley Hinton, who were "high-level employees of SCA" during the relevant period;

3. Constructive fraud and imposition of constructive trust against all appellants;

4. Breach of contract against Mark Shepard;

5. Breach of trust against SCA;

6. Violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA") against SCA, Mark, Brock, and Skydancing;

7. Civil conspiracy against all appellants; and

8. Unjust enrichment against all appellants.

## B. The TCPA motion

The appellants answered the suit and filed a motion to dismiss under the TCPA. The appellants argued that the TCPA applied for the reasons explained below.

5

### 1. Breach of fiduciary duty and aiding and abetting breach of fiduciary duty

First, in the "factual background" section of the petition, Voss alleged facts about the wage dispute filed in the TWC, and he described the appeal of that decision by "SCA (through Mark)" as taken in "bad faith." Voss made factual allegations about Mark's filing of grievances against Voss's engineering licenses. In the "Claims" section of the petition, Voss alleged each of his claims separately. Each claim was set apart by a subheading that designated each claim as a numbered "count." Beneath each subheading, or "count," was an incorporation clause that said either: "Plaintiffs incorporate all preceding paragraphs as if fully set forth herein," or "Plaintiffs incorporate all allegations made in the preceding paragraphs."

The appellants argued that the incorporation by reference of the preceding paragraphs meant that Voss's claim for breach of fiduciary duty against Mark was based in part on Mark's decision to appeal the TWC decision and his filing of grievances against Voss in three states. They argued that Voss's claim for breach of fiduciary duty was therefore based on Mark's exercise of the right to petition. The trial court stated that it partially granted the motion on this limited basis.

Second, the appellants argued that Voss's breach of fiduciary duty cause of action was based on the corporate positions held by Mark and Brock and their business-related communications. They also argued that Voss's cause of action

against Newhouse, Hinton, and Skydancing for aiding and abetting breach of fiduciary duty are likewise based on Newhouse and Hinton's participation in corporate meetings. The appellants argued that the breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims are based on the exercise of the rights to free speech and association. They further argued that the communications were matters of public concern because structural engineering services affect the health, safety, and well-being of the public. Thus, they argued, these claims should be dismissed.

### 2. Violation of TUFTA by SCA

The appellants argued that Voss's cause of action for a TUFTA violation was based on SCA's social media communications and was therefore based on SCA's exercise of free speech and association. Like the argument about breach of fiduciary duty, this argument relied in part on allegations in Voss's "factual background" that were incorporated by reference. The appellants also based this argument on Voss's allegation that the allegedly fraudulent transfer of assets from SCA to Skydancing was "concealed by representing to the public via social media that Skydancing is merely a continuation of SCA, when it is not." The appellants asserted that Voss's claims were based on SCA's public communications about its association with Skydancing, which "is a subject of concern to the public which affects the health, safety, and well-being of the community."

7

### 3. Breach of contract, breach of trust, violation of TUFTA, unjust enrichment

Finally, the appellants argued that these causes of action arose from the same facts as the breach of fiduciary duty claims. For the same reasons, therefore, the appellants argued that the TCPA applied, and these causes of action must be dismissed.

### C. The trial court's ruling

In its order ruling on the TCPA motion, trial court granted Voss's objection to Mark Shepard's affidavit, which was attached to the TCPA motion. The trial court granted the TCPA motion in part and denied the motion in part:

> It is . . . ORDERED that SCA's TCPA motion is GRANTED ONLY as it pertains to the allegations of the appealing of the Texas Workforce Commission appeal supporting the breach of fiduciary duty cause of action. As to the remainder of Plaintiff's breach of fiduciary duty cause of action the TCPA motion is DENIED.
>
> It is further ORDERED that Mark Shepard's TCPA motion is GRANTED ONLY as it pertains to the allegations of the filing of grievances against Plaintiff's engineering licenses supporting the breach of fiduciary duty cause of action. As to the remainder of Plaintiff's breach of fiduciary duty cause of action the TCPA motion is DENIED.
>
> . . . .
>
> It is further ORDERED that the remainder of Defendants' TCPA motion and Motion to Dismiss are DENIED.
>
> It is further ORDERED that neither party submitted an affidavit to allow for the award of attorneys' fees hence both parties request for fees is DENIED.

The defendants appealed.

## Analysis

In the first five issues, the appellants challenge the trial court's partial denial of their TCPA motion to dismiss. In the sixth issue, they argue that the trial court erred by denying their request for attorney's fees when the court partially granted their TCPA motion. In their seventh issue, they argue that the trial court erred by granting appellees' objection to Shepard's affidavit because the affidavit is not a sham affidavit.

## I.     Interlocutory jurisdiction

In their sixth and seventh issues, the appellants challenge rulings in the trial court's order for which we lack interlocutory appellate jurisdiction. We address these issues first.

### A.     The evidentiary ruling

Ordinarily, Texas appellate courts have jurisdiction only over final judgments. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 92 (Tex. 2012). An exception to this general rule exists when a statute authorizes an interlocutory appeal. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *see* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (authorizing interlocutory appeal from order denying TCPA motion to dismiss). Although the Civil Practice and Remedies Code authorizes the immediate appeal of an order denying a TCPA motion to

9

dismiss, it does not authorize an interlocutory appeal from "all other ancillary rulings contained within the same written 'interlocutory order.'" *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 891 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The trial court's order sustaining the objection to Mark Shepard's affidavit is an ancillary ruling contained within the same written interlocutory order that partially denied the appellants' TCPA motion. We lack jurisdiction to consider this challenge, and we dismiss the appeal from the trial court's evidentiary ruling.

## B.    The attorney's fees ruling

The appellants argue that the portion of the trial court's order that denied attorney's fees is different. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441–42 (Tex. 2017) (addressing, in interest of judicial economy, challenge to trial court's denial of attorney's fees as to partial grant of TCPA motion in interlocutory appeal from partial denial of TCPA motion); *SSCP Mgmt. Inc. v. Sutherland/Palumbo, LLC*, No. 02-19-00254-CV, 2020 WL 7640150, at *12 (Tex. App.—Fort Worth Dec. 23, 2020, pet. denied) (mem. op.) (reversing denial of TCPA dismissal motion in part and remanding to trial court to address mandatory attorney's fees and costs). We disagree.

In *D Magazine*, the trial court denied a TCPA dismissal motion as to the plaintiff's cause of action for defamation, but it granted the TCPA motion as to the plaintiff's statutory causes of action under the Texas Deceptive Trade Practices–

Consumer Protection Act and the Identity Theft and Protection Act. 529 S.W.3d at 432. But the trial court denied D Magazine's request for attorney's fees as to the partial dismissal. *Id.* at 441. The Texas Supreme Court concluded that the statutory claims were "legal actions" under the TCPA, and it reversed and remanded for the trial court to enter the statutorily required award of attorney's fees. *Id.* at 442.

In *SSCP Management*, the plaintiff sued alleging that the defendants had fraudulently induced it to purchase real property at an artificially inflated price. 2020 WL 7640150, at *1–2. The plaintiff alleged causes of action for breach of contract, fraud, fraud by nondisclosure, fraudulent inducement, fraud in a real estate transaction, negligent misrepresentation, conspiracy, violations of the Deceptive Trade Practices Act, and common law and statutory false advertising. *Id.* at *2. The defendants sought dismissal under the TCPA for all causes of action except breach of contract. *Id.* The motion was denied by operation of law, and the trial court later awarded the plaintiff attorney's fees more than $90,000. *Id.*

The appellate court reversed in part, dismissing the plaintiff's causes of action for: fraud, fraudulent inducement, fraud in a real estate transaction, negligent misrepresentation, DTPA "laundry-list" violations, and false advertising. *Id.* at *7, 10. Without explaining why these distinct causes of action were "legal actions" under the TCPA, the appellate court held that the appellants were entitled

to recover "some amount for attorney's fees" under the TCPA's mandatory attorney's fees provision in section 27.009. *Id.* at *12.

At the hearing on the TCPA dismissal motion in this case, the parties argued about whether Voss had based his breach of fiduciary duty claim on the decision to administratively appeal the TWC wage claim or Mark Shepard's filing of engineering grievances. Counsel for the appellants stated that he understood that none of Voss's claims were based on the administrative appeal of the TWC wage claim. Counsel for the appellants also stated that he understood the case was about the transfer of assets from SCA to Skydancing. Counsel for Voss argued that the appellants were misconstruing what he considered to be standard incorporation clauses, but the appellants responded that the petition incorporated those allegations into the breach of fiduciary duty cause of action. Counsel for Voss also stated that the factual allegation about the filing of grievances had "nothing to do with a breach of fiduciary duty."

The trial court's order puts some language to the arguments raised by the parties, and it limits the breach of fiduciary duty claim to facts other than those related to the administrative appeal of the TWC wage claim and the filing of grievances. But this does not amount to the dismissal of a legal action under the TCPA. The TCPA mandates the award of attorney's fees when a court dismisses "a legal action" under the TCPA dismissal provisions. *See* TEX. CIV. PRAC. & REM.

CODE § 27.009(a). The TCPA defines a "legal action" to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6). "[C]ourts cannot dismiss 'a fact or facts.' Rather, courts dismiss claims, causes of action, cases, and lawsuits." *Montelongo v. Abrea*, 622 S.W.3d 290, 301 (Tex. 2021).

The appellants argue that they are entitled to some amount of attorney's fees because the trial court ordered dismissal of Voss's breach of fiduciary duty claims "as they relate to Appellants' actions in filing grievances and appealing [TWC] decisions." Appellants do not explain how or why the order limiting the basis for a breach of fiduciary duty claim dismisses a "legal action" under the TCPA, when the trial court did not dismiss Voss's cause of action for breach of fiduciary duty. Despite the trial court's language stating that it granted the motion in part, in substance the trial court's order did not dismiss a legal action in the meaning of the TCPA. Therefore, the appellants' challenge to the part of the order that denied attorney's fees is a challenge to an interlocutory order for which the Legislature has not authorized an interlocutory appeal. We lack jurisdiction to consider this challenge, and we dismiss the appeal from the trial court's attorney's fees ruling.

## II.     The TCPA motion

The appellants argue that the trial court erred by denying their TCPA motion to dismiss in all other regards. They make arguments in the alternative about each step of the TCPA burden-shifting procedure, asserting that they demonstrated the applicability of the TCPA, Voss failed to make a prima facie case for his claims, and they proved affirmative defenses. We do not address all the appellants' arguments, however, because we conclude that they did not demonstrate the applicability of the TCPA.

### A.     The TCPA and its dismissal provisions

The Legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 913 (Tex. 2023); *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019) (noting that TCPA "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern"). The statute provides this protection by authorizing a motion to dismiss early in the covered proceedings, subject to expedited interlocutory review. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, .008;

14

*McLane*, 671 S.W.3d at 910. "If a legal action is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b), that party may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE § 27.003. In ruling on the motion, the trial court may consider the pleadings, evidence that could be considered in a summary judgment proceeding, and affidavits stating the facts on which the liability or defense is based. *Id.* § 27.006(a).

"The TCPA employs a burden-shifting framework." *Jetall Cos., Inc. v. Sonder USA Inc.*, No. 01-21-00378-CV, 2022 WL 17684340, at *15 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.) (mem. op.). The party moving for dismissal bears the initial burden to demonstrate that the legal action is based on or in response to the party's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b)(1). Each of these rights are defined in the TCPA. *Id.* § 27.001(2)–(4). "The party seeking dismissal must demonstrate that the legal action is 'factually predicated' on conduct that falls within the scope of the right of free speech, right of association, or right to petition as statutorily defined." *Jetall Cos.*, 2022 WL 17684340, at *15 (quoting *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 428–29 (Tex. App.—Dallas 2019, pet. denied)); *see Porter-Garcia v. Travis Law*

15

*Firm, P.C.*, 564 S.W.3d 75, 85 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).[4]

We review de novo the applicability of the TCPA and the trial court's ruling denying a TCPA motion to dismiss. *See Dall. Morning News*, 579 S.W.3d at 377. In determining whether a legal action is subject to or should be dismissed under the TCPA, a court shall consider the pleadings, evidence the court could consider under the summary-judgment rule, and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE § 27.006(a); *cf. Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (stating, in connection with step one, that plaintiff's petition is best and sufficient evidence of nature of action). We review the pleadings and evidence in the light most favorable to the nonmovant. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—

---

[4] If the legal action is based on or in response to the movant's exercise of a right protected under the TCPA, the trial court must deny the motion to dismiss if the claimant establishes the applicability of a statutory exemption. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (stating that if statutory exemption applies, movant cannot invoke TCPA's protections*); Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.) ("If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action."). If the movant demonstrates the applicability of the TCPA—and no statutory exemption applies—the burden shifts to the nonmoving party to establish by clear and specific evidence a prima facie case for each essential element of its claim. TEX. CIV. PRAC. & REM. CODE § 27.005(c). If the nonmoving party cannot satisfy that burden, the trial court must dismiss the suit. *Id.* But if the nonmovant establishes a prima facie case for each essential element of its claim, the trial court shall nevertheless "dismiss a legal action against the moving party if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Houston [1st Dist.] 2020, pet. dism'd) (en banc); *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). We must construe the TCPA liberally to effectuate its purpose and intent fully. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

### B.    Rights of free speech and association

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). "Communication," as used in the statute, "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The exercise of the right of association "means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* § 27.001(2).

"Both the right of free speech and the right of association, as defined in the TCPA, involve matters of public concern." *Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *4 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE § 27.001(2), (3)). The TCPA broadly defines a "matter of public concern" to include a statement or activity about (1) "a matter of political, social, or other interest to the community," or (2) "a subject of concern to the public." TEX. CIV.

17

PRAC. & REM. CODE § 27.001(7)(B), (C). "But the definition is not without limit." *Ernst & Young*, 2023 WL 4239350, at *5. To be a matter of public concern within the meaning of the TCPA, a claim must have "public relevance beyond the pecuniary interests of the private parties involved." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019); *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "Private disputes, whether based in contract or tort, affecting only the litigants' fortunes are not matters of public concern." *Ernst & Young*, 2023 WL 4239350, at *5; *see Gaskamp*, 596 S.W.3d at 475–77 (noting that tort claims with no potential impact on wider community or public audience are not TCPA matters of public concern).

The appellants argue that Voss's claims are based on or in response to their exercise of the right to free speech. They argue that Voss's claims are based on their public, online communication about the association between SCA and Skydancing, which they maintain was an exercise of the right to free speech. They contend that these communications "constitute a matter of public concern because the building projects for which [SCA] provides structural design services pose serious risk to the health and safety of the public if those structural designs are defective or unsound," and because of the public interest in "proper licensing and experience" of engineers. App. Br. 22.

18

They further argue that Voss's claims are based on or in response to their exercise of the right to free speech and association because they are based on their shared interest in SCA's business. They argue that the nature of the business itself makes their speech and conduct matters of public concern because SCA "performs structural engineering services affecting the health, safety, and wellbeing of the public."

The pre-2019 version of the TCPA defined "matter of public concern" specifically to include issues "related to . . . health or safety [and] . . . environmental, economic, or community well-being." Act of May 21, 2011, 82nd Leg., R.S., ch. 341 § 2. The 2019 amendment to the TCPA, the current and applicable statute in this case, now defines a matter of public concern more narrowly, to include "a statement or activity regarding . . . a matter of political, social, or other interest to the community; or . . . a subject of concern to the public." TEX. CIV. PRAC. & REM. CODE § 27.001(7).

Matters of public health and public safety may be included within this definition, but that determination depends on the facts of each case. It is axiomatic that the public may be interested in the safe or unsafe design and construction of public buildings, but it is not evident from the record that the statements announcing an association between SCA and Skydancing or the challenged

19

corporate conduct related to any subject of concern to the public, such as any public safety function of a structural engineer.

## C. "Based on" or "in response to"

Even if we were to accept the appellants' position that their speech and conduct pertained to a matter of public concern, the TCPA does not automatically apply simply because a claimant's pleading has alleged facts about a communication or interest in a matter of public concern. *See Ernst & Young*, 2023 WL 4239350, at *5. Rather, the challenged claims must be based on or in response to that communication or conduct. *Id.* To determine whether the challenged claims are based on the alleged communication or conduct on a matter of public concern, we consider the factual allegations in the claimant's pleading in a light most favorable to the claimant—that is, favoring the conclusion that the claims are not predicated on protected expression. *Id.* (citing *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd)).

The 2019 amendment to the TCPA requires that the challenged claims have more than a tangential relationship to the communication about or interest in a matter of public concern.[5] *Id.* at *8. Rather, the claim must be based on or "in

---

[5] In *Ernst & Young*, we explained that the Legislature narrowed the ability of a movant to argue a tangential connection to protected rights by eliminating the "relates to" language from the TCPA:

response to" the relevant TCPA-protected activity. TEX. CIV. PRAC. & REM. CODE § 27.003(a).

A legal action is based on a protected activity when the protected activity is "a main ingredient" or "fundamental part" of the challenged

---

When the Legislature amended the TCPA in 2019, one of the more significant changes to the statute was a narrowing of the categories of connections a claim could have to the exercise of a protected right. *See ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 626 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). Originally, the movant had to establish that a legal action was "based on," "relate[d] to," or "in response to" the movant's exercise of a protected right. TEX. CIV. PRAC. & REM. CODE § 27.005(c) (pre-amendment version). "Relate[d] to" was the most expansive of the three categories of connections and brought tangential communications within the TCPA's reach. *See Union Pac. R.R. Co. v. Chenier*, 649 S.W.3d 440, 448 (Tex. App.—Houston [1st Dist.] 2022, pet. denied); *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 604 (Tex. App.—San Antonio 2018, pet. denied) (interpreting "relates to" as a broad qualifier); *Calvin v. Abbott*, 545 S.W.3d 47, 69 n.85 (Tex. App.—Austin 2017, no pet) (interpreting "relates to" as merely denoting "some sort of connection, reference, or relationship"); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 1916 (2002) (defining "relate" as "to be in relationship: to have reference"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (2011) (defining "relate" as "to have connection, relation, or reference"). However, the 2019 amendments deleted "relates to" from the list, thereby requiring future movants, like appellants, to establish that the legal actions they seek to dismiss are "based on" or "in response to" their exercise of a protected right. TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), .005(b) (new version); *see* Laura Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 TEX. TECH. L. REV. 163, 169 (2020) (noting that the deletion of "relates to" increased the burden on movants seeking dismissal).

*Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *7 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied) (mem. op.).

legal action. *See Serafine v. Blunt*, 466 S.W.3d 352, 391 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) (citing WEBSTER'S at 180 (defining "base" (n.) as "main ingredient" and "fundamental part of something"); AMERICAN HERITAGE at 148 (defining "base" (n.) as "fundamental principle," "underlying concept," "fundamental ingredient," and "chief constituent"); BLACK'S LAW DICTIONARY at 180 (defining "base" (v.) as "to use (something) as the thing from which something else is developed")). The second component—"in response to"—denotes some sort of answer or other act in return. *Id.* (citing WEBSTER'S at 1935 (defining "response" as "act or action of saying something in return, making an answer"); AMERICAN HERITAGE at 1496 (defining "response" as "an answer")).

*Ernst & Young*, 2023 WL 4239350, at *8.

## D.   The TCPA does not apply.

In the trial court, the appellants sought dismissal of Voss's eight causes of action:

1.   Breach of fiduciary duty;
2.   Aiding and abetting breach of fiduciary duty;
3.   Constructive trust/constructive fraud;
4.   Breach of contract;
5.   Breach of trust;
6.   Violation of Texas Uniform Fraudulent Transfer Act;
7.   Civil conspiracy; and
8.   Unjust enrichment.

In their brief, the appellants appear first to challenge the trial court's ruling as to all eight causes of action, and later they appear to argue only about three causes of action: (1) violation of the TUFTA, (2) breach of fiduciary duty, and (3) aiding and abetting breach of fiduciary duty. However, we do not need to evaluate their arguments on a claim-by-claim basis because the appellants make

the same arguments about why their exercise of the rights to free speech and association implicated matters of public concern. And our examination of Voss's pleading demonstrates that his claims are not based on or in response to the appellants' alleged exercise of protected rights.

Voss pleaded the following facts relevant to his claims:

- SCA is a structural engineering firm organized under the laws of the state of Texas and incorporated in 1987. Stephan Voss is a licensed professional engineer, and he began his employment at SCA in June 2002. On or about January 30, 2015, Voss became a shareholder of SCA, owning twenty percent (20%) of SCA's issued and outstanding common stock. . . . Since January of 2015 to present, Mark and Voss have been the only shareholders of SCA with Mark owning eighty percent (80%) of the common stock, and Voss owning the remaining twenty percent (20%). Mark has been a director of SCA through present. As part of the agreement, Mark agreed that in the event Voss left SCA, his interest would be repurchased . . . .

- Beginning in and around 2015, the intent of Mark and Voss would be to transition more the ownership to Voss, with Mark having the opportunity to step back and retire from the day-to-day operations of SCA. Over time, it became evident to Voss that this was not happening. By late 2021, this, along with other issues that made Voss's continued employment at SCA intolerable, caused Voss to plan to terminate his employment at SCA. On March 4, 2022, Voss resigned as an employee, officer and director of SCA . . . . Voss sent correspondence to SCA on March 28, 2022, requesting payment for the owed unpaid wages and . . . [to] have his ownership in SCA purchased or redeemed.

- Voss never received a response, and . . . SCA filed litigation against Voss [and others]. Following the resignation, Mark retaliated and refused to pay Voss's . . . wages for his last pay period. . . . In addition to the bad faith refusal to pay the Unpaid Wages, Mark personally filed grievances against Voss's engineering licenses . . . .

23

- Then, to punish Voss for exercising his legal right to change jobs, Mark devised a nefarious scheme to transfer all the assets of SCA to a new entity in which Voss would own no interest. Thus, Mark conspired to deprive Voss of the value of his 20% interest in SCA.

- [L]ess than two months after Voss resigned from SCA, Mark . . . filed a certificate of formation for Skydancing Consultants Associates, Inc. In the certificate, Skydancing claims the same address as SCA . . . . Upon information and belief, Mark used the name Skydancing Consultants Associates, Inc. because it had the same initials as SCA, so that he could more easily deceive Voss as to his nefarious scheme. Mark and his co-conspirators thus effectuated and carried out a plan whereby the business, assets and opportunities of SCA (in which Voss has a 20% interest) would be surreptitiously shifted to a different entity with the same initials (in which Voss has a 0% interest) for the purpose of depriving Voss of his ownership interest, distributions and other benefits of ownership.

- In July 2022, Mark organized a meeting to discuss—with its new ownership group . . . the details of how Skydancing would be created. The new company would have a new ownership team, and that Mark would transfer the assets of SCA to Skydancing without any compensation for SCA. No discussion of paying SCA or Voss for the assets was made.

- [I]n October 2022, SCA transferred its valuable intellectual property to Skydancing. Since October 2022, SCA's Website has promoted Skydancing, allowing Skydancing to falsely claim credit for an existence back to 1983 . . . . This is not just SCA rebranding; the website is clear that the ownership is consistent with the management team filed with the Secretary of State for Skydancing. Thus, Skydancing has been, since October 2022, operating SCA's website without compensation.

- By December 2022, Mark had transferred all or substantially [all] of the assets of SCA to Skydancing without any compensation for SCA . . . [including] (a) scaengineers.com, SCA's website, was taken over by Skydancing; (b) SCA's logo was being used by Skydancing; (c) SCA was not being compensated by Skydancing for the use of SCA's intellectual property; (d) [a]ny new customers or clients that called or

24

contacted SCA would be referred to Skydancing; (e) SCA permitted Skydancing to claim the creation of projects predating Skydancing's creation; (f) Skydancing was taking the reputation and goodwill of SCA without compensation . . . .

- On or about January 19, 2023, SCA announced on LinkedIn and other social media that it was not Skydancing . . . . Skydancing is now operating in the place of SCA, having received all SCA's business opportunities, tangible and intangible assets, together with the goodwill of SCA comprising an entire enterprise, without having to pay the cost of an asset purchase or merger agreement.

- Mark and Brock, while directors and officers for SCA, facilitated that Skydancing, in which Brock owns a direct interest, would "tak[e] over contracts and staff" from SCA on "January 1st," as well as SCA's "goodwill" and "other assets" but that there had not even been discussions regarding whether the "company [would] receive compensation from Skydancing" for such assets "at this time" in December 2022.

- [Appellants] participated in meetings regarding the uncompensated transfer of assets from SCA to Skydancing for Skydancing's (and their own) benefit. Skydancing was aware of the fiduciary duties because it shared common directors.

- All or substantially all of the assets from SCA have been transferred to Skydancing and can be traced back to SCA. Skydancing is using the same website, contact information and intellectual property from SCA, offices in the same space using the same computers, furniture, and equipment, and services the same clients with the same employees. Skydancing effectively acquired all the assets of a going concern without any compensation to SCA for the benefit of its shareholders.

- By distributing all the assets of SCA to Skydancing, in breach of his fiduciary duty to preserve the assets of SCA, Mark maliciously destroyed the value of SCA and breached the contract. As a result, Voss has suffered the loss of all the value in his equity in SCA. SCA, through the actions of its directors Mark and Brock, transferred the assets to Skydancing.

- Defendants combined to transfer all the assets from SCA without payment . . . . The conspirators had a meeting of the minds, determining by a July 2022 meeting at the latest that SCA would transfer all the assets to Skydancing . . . .

The allegations in Voss's pleading clarify that his claims are based on and in response to the alleged improper transfer of assets from SCA to Skydancing. The speech and corporate conduct identified by the appellants is not a main ingredient or fundamental part of Voss's claims. The appellants have not shown that Voss's claims are factually predicated on their exercise of the right to free speech or association. *See Jetall Cos.*, 2022 WL 17684340, at *15.

We therefore hold that the TCPA does not apply to Voss's claims. We conclude that the trial court did not err by denying the motion to dismiss. We overrule the appellants' first issue, and we do not address the appellants' remaining issues because they are not necessary to this disposition of this appeal. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the order of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.